## BAY v. MERRILL & RING LUMBER CO.

(District Court, W. D. Washington, N. D. February 20, 1914.)

No. 2439.

1. TRIAL (§ 139*)—QUESTIONS OF LAW AND FACT—DIRECTION OF NONSUIT.

It is the duty of the court to direct a nonsuit when the evidence is not sufficient to sustain a verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

2. MASTER AND SERVANT (§ 265*) — INJURIES TO SERVANT — EMPLOYERS' LIABILITY ACT.

In order that an injured servant of a railroad company may recover under Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), the burden is on him to show that the railroad company owned and operated a common carrier railroad; that it was engaged in interstate or foreign commerce; and that plaintiff was injured while employed by it in such commerce.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*

Employés engaged in interstate commerce within Employers' Liability Act, see note to Baltimore & O. R. Co. v. Carr, 124 C. C. A. 571.]

3. CARRIERS (§ 4*)—"COMMON CARRIER."

A "common carrier" is one who undertakes to transport for hire from one place to another the goods of such as wish to employ him.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1, 462–478; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 2, pp. 1313–1319; vol. 8, p. 7607.]

4. COMMERCE (§ 27*)—INJURIES TO SERVANT—EMPLOYERS' LIABILITY ACT—INTERSTATE COMMERCE.

Defendant owned a tract of timber land, which it was engaged in logging, and a railroad on which it transported its logs from the woods to Puget Sound, where they were sold to millowners and manufactured into lumber; 80 per cent. of the output of the mill being shipped to other states or countries. Defendant's articles of incorporation authorized it to do business as a common carrier, but in fact the services rendered on its road had all been private and only for the purpose of carrying the logs to the Sound. Held, that the transportation of the logs did not constitute interstate commerce within the rule that a commodity is not in interstate commerce until it has entered on its final passage to another state or foreign country, and hence defendant could not be made liable under Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), for injuries to an employé while assisting in the operation of the road.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

At Law. Action by August Bay against the Merrill & Ring Lumber Company. On motion for a new trial after nonsuit. Denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John T. Casey, of Seattle, Wash., for plaintiff.

Hughes, McMicken, Dovell & Ramsey, of Seattle, Wash., for defendant.

Plaintiff cites the following authorities: Colasurdo v. Central Ry. (C. C.) 180 Fed. 832; The Daniel Ball v. U. S., 10 Wall. 557, 19 L. Ed. 999; El Paso Ry. v. Gutierrez, 215 U. S. 88, 30 Sup. Ct. 21, 54 L. Ed. 106; Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879; Pedersen v. Delaware, etc., Ry., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125; St. Louis Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129; N. & W. Ry. Co. v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L Ed. 1096; I. C. Ry. v. Porter, 207 Fed. 311, 315, 125 C. C. A. 55; Winona Ry. v. Blake, 94 U. S. 180, 24 L. Ed. 99; State ex rel. Clark v. Superior Court, 62 Wash. 612, 114 Pac. 444; North River Boom Co. v. Smith, 15 Wash. 138, 45 Pac. 750; State ex rel. Wilson v. Superior Court, 47 Wash. 397, 92 Pac. 269; State ex rel. Burrows v. Superior Court, 48 Wash. 277, 93 Pac. 423, 17 L. R. A. (N. S.) 1005, 125 Am. St. Rep. 927; McCall v. People, 136 U. S. 104, 10 Sup. Ct. 881, 34 L. Ed. 391; Railroad Co. v. Worthington, 225 U. S. 101, 32 Sup. Ct. 653, 56 L. Ed. 1004; Behrens v. Railway (D. C.) 192 Fed. 581; Darr v. Railway (D. C.) 197 Fed. 665; Thompson v. Railway (D. C.) 205 Fed. 203; Northern Pacific Ry. v. Maerkl, 198 Fed. 1, 117 C. C. A. 237; Worthington v. Elmer, 207 Fed. 306, 125 C. C. A. 50; R. R. Commission of La. v. Tex. & Pac. Ry., 229 U. S. 336, 33 Sup. Ct. 837, 57 L. Ed. 1215, decided June 10, 1913; General Oil Co. v. Grain, 209 U. S. 212, 28 Sup. Ct. 475, 52 L. Ed. 754; Dozier v. Alabama, 218 U. S. 124, 127, 30 Sup. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264; Rearick v. Pennsylvania, 203 U. S. 507, 27 Sup. Ct. 159, 51 L. Ed. 295; In re Selman (D. C.) 204 Fed. 839; Baltimore v. Darr, 204 Fed. 751, 124 C. C. A. 565; Rosenbaum Co. v. Railway (C. C.) 130 Fed. 46; State v. Ry. (Tex. Civ. App.) 44 S. W. 542; Caldwell v. Nor. Car., 187 U. S. 622, 23 Sup. Ct. 229, 47 L. Ed. 336; Houston v. Insurance Co., 89 Tex. 1, 32 S. W. 889, 30 L. R. A. 713, 59 Am. St. Rep. 17; I. C. C. v. Railway, 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280; Texas Ry. v. R. R. Commission (C. C.) 183 Fed. 1005; Horton v. Railway, 72 Wash. 503, 130 Pac. 897; U. S. v. Colorado Ry., 157 Fed. 321, 85 C. C. A. 27, 15 L. R. A. (N. S.) 167, 13 Ann. Cas. 893; Robbins v. Shelby County, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; Mondou v. N. Y. Ry., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Kelly v. Rhoades, 188 U. S. 1, 23 Sup. Ct. 259, 47 L. Ed. 359; U. S. v. Ry. (D. C.) 197 Fed. 624; So. Ry. v. Gadd, 207 Fed. 277, 125 C. C. A. 21; Yazoo Ry. v. Wright, 207 Fed. 281, 125 C. C. A. 25; Walker v. New Mexico & S. P. R. Co., 165 U. S. 593, 17 Sup. Ct. 421, 41 L. Ed. 837; U. S. v. Union Stockyards, 226 U. S. 286, 33 Sup. Ct. 83, 57 L. Ed. 226, decided December 9, 1912.

NETERER, District Judge. The testimony upon the trial, on the part of the plaintiff, established the fact that the defendant was the owner of a large tract of timber land in King and Snohomish counties, and was engaged in logging the land, selling all logs upon the open market, and in connection with this land it owned a logging road of standard gauge build which was connected by switch or siding with the Great Northern Railway; that the defendant operated over its road engines and logging cars; that it has large booming grounds in the waters of Puget Sound about two miles below Mukilteo; that it operates several large logging camps upon its lands; that over its logging road it runs five or six logging trains each day to and from its various camps and places in its booms over half a million logs per day; that the logs are sold by the defendants to the various mills upon Puget Sound; that poles and piles which it cuts from its land are sold to a company which ships them to California; that the logs are sold by it from its boom to the Weyerhouser Mill at Everett, and are manu-

factured by said mill with other logs purchased by it from other sources and sold on the market upon orders which are received by the mill from the eastern and central western states and coast cities, and from foreign countries, and from the state of Washington; that about 80 per cent. of the output of the mill is shipped to other states or countries; that the defendant is a corporation organized under the laws of the state of Washington, and among its authorized powers is that of common carrier together with numerous other powers; that the defendant never at any time operated its road as a common carrier or tendered it in any way to the public for service; that the services rendered by the said road have all been private, and for the purpose of carrying to the booming ground of the defendant the timber taken from its land; that no other product has been taken over the road except some timber taken from the land of another under contract with the defendant to log the land for the owner and deliver the logs in the waters of Puget Sound; and certain poles or piles taken from the land of the defendant which were sold to the National Pole Company at a certain rate per stumpage delivered at the boom of the defendant company; that no service was rendered by the plaintiff in the hauling of any of the poles.

After the plaintiff rested his case, the defendant moved for a nonsuit on the ground that there was no testimony to sustain a verdict. The motion was granted. A motion for a new trial has been filed and submitted.

[1] It is strongly urged by the plaintiff that the court erred in granting motion for nonsuit, citing Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879. It is urged in argument that it is the duty of the judge to submit a case to the jury upon the testimony which is presented, and let the jury determine whether recovery should be had, upon the instructions which the court gives upon the law, and that it is an invasion of the constitutional right of the plaintiff to deprive plaintiff of this privilege. In the Slocum Case the trial judge submitted the issues to the jury upon the testimony which was presented on the part of the litigants. Thereafter a judgment was entered non obstante veredicto by the Circuit Court of Appeals. The Supreme Court held that this was an infraction of the seventh amendment to the Constitution of the United States, which provides:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined * * * than according to the rules of the common law."

The court stated that the entering of a judgment by the court non obstante veredicto was the trial of an issue that had been submitted to the jury, and that the power of the court was limited to granting a new trial. The same case, however, holds—and this has been recognized by all of the federal courts—that, where there is no testimony to support a verdict, it is the duty of the court to grant a dismissal. The judge's function is to superintend and direct the course of trial, and the jury are to determine the ultimate facts in issue; and, when the facts disclosed by the testimony clearly cannot under the law support a verdict, it would be useless to submit it to a jury.

The act under which this action is prosecuted provides:

"That every common carrier by railroad while engaged in commerce between any of the several states * * * shall be liable in damages," etc.

[2] In order for the plaintiff to recover he must establish that the defendants owned and operated a common carrier railway and was engaged in interstate or foreign commerce, and that the plaintiff was employed by the defendant in such trade or commerce and was injured while so employed. Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Pedersen v. Del. Lack. & West. Ry., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125.

[3] A common carrier is one who undertakes to transport for hire from one place to another the goods of such as choose to employ him. 2 Words & Phrases, 1312; Jackson, etc., Iron Works v. Hurlbut, 158 N. Y. 34, 52 N. E. 665, 70 Am. St. Rep. 432.

[4] A concern is not a common carrier that is engaged in transporting its own products, and, before a concern incorporated as a common carrier could come within the terms of the Employers' Liability Act of Congress, it would have to do something further than merely file its articles of incorporation. The timber holdings and the railroad are held by the same concern, operated together as one property; the railroad is used as a "plant" facility to bring the logs to the booming grounds of the defendant on tidewater. Joint Rates with Wash. Western Ry., 27 Interst. Com. Com'n Rep. 630. The defendant was simply engaged in placing the product of its own land in its own booming grounds so as to be in a marketable condition. The act of the defendant in placing its logs in the boom or sale grounds can best be compared to the farmer placing his corn or wheat in a crib or granary, and when so placed to dispose of it upon the market to persons offering the best prices. So long as the product of the forests of the defendant remained in the boom grounds, it certainly cannot be contended that any relation of common carrier or interstate commerce could enter into or attach thereto. If no interstate commerce character or common carrier relation could attach to the logs in the boom by being permitted to remain there covering a long period of time, the fact that they remained there for a short interval cannot change that relation or character.

It becomes important to know when the logs in issue began their final journey to the market and to their final destination. A commodity is not in interstate commerce until it has entered upon its final passage to another state or foreign country.

"Whenever a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced." The Daniel Ball Case, 10 Wall. 565, 19 L. Ed. 999.

"When the products of the farm or the forest are collected and brought in from the surrounding country to a town or station serving as an entrepot for that particular region, whether on a river or a line of railroad, such products are not yet exports, nor are they in process of exportation, nor is exportation begun until they are committed to the common carrier for transportation out of the state to the state of their destination or have started on their ultimate passage to that state." Coe v. Errol, 116 U. S. 517, 525, 6 Sup. Ct. 475, 477 (29 L. Ed. 715).

The same language is in substance and effect repeated by the same court in every case which has been called to my attention. "Continuity of movement," said the Supreme Court in the Sabine Tram Case, 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442, is the concluding factor in determining whether a commodity has started on its ultimate passage to a foreign state.

The Supreme Court of the United States, in Bacon v. Illinois, 227 U. S. 504, 33 Sup. Ct. 299, 57 L. Ed. 615, which was a case where grain was purchased in localities in a number of states and shipped by original owners who were residents of such states and consigned to New York, Philadelphia, and other eastern cities, the owner reserving the right to remove the grain at Chicago for the purpose of weighing, cleaning, inspecting, etc., and thereafter to be reshipped to destination and consignees at the election of the owners, held that the owner had the privilege of continuing the transportation under the shipping contract, of which he might avail himself, but that this provision in the contract made it optional with the owner whether the grain should continue to its destination or not, and when it was taken from the cars at Chicago to the private elevator that the transportation had ceased and the interstate commerce character had been ended. In the instant case the logs had not entered upon a final journey to their ultimate destination. They had simply been accumulated in their raw state and shipped to the boom grounds, where they were distributed to the various mills which purchased the logs and manufactured them into lumber. I do not believe that the act was intended to cover such a case, and the conclusion is inevitable that the facts in this case do not bring the plaintiff within the liability act, under which this action is prosecuted. Any other conclusion on the part of the court, it seems to me, would be revolutionary in endeavoring to adopt a plan or system which had not been contemplated by Congress to the business interests of the country, and no good purpose could be subserved.

The motion for a new trial is denied.