NORDGARD v. MARYSVILLE & N. RY. CO. et al.

(District Court, W. D. Washington, N. D. February 21, 1914.)

No. 2364.

1. TRIAL (§ 139*)—QUESTIONS OF LAW AND FACT—DIRECTION OF NONSUIT.
It is the duty of a federal court to direct a nonsuit when the evidence is not sufficient to sustain a verdict.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

2. COMMERCE (§ 27*)—INJURIES TO SERVANT—EMPLOYERS' LIABILITY ACT—COMMERCE.
Defendant railroad company carried logs from the forests in Washington to Puget Sound, where part of them were sold to various mills and the remainder taken to defendant milling company where they were manufactured. The lumber was piled in a yard, about 20 per cent. sold in the local market, and the remainder shipped to various points in and

out of the state. *Held* that, since continuity of movement is essential in determining whether a commodity is started in interstate commerce, the logs, during transportation from the forest to Puget Sound, in which plaintiff was employed, were not being transported in interstate commerce, and hence the railroad company in so transporting them was not liable for injuries to plaintiff under Federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

At Law. Action by Gunder Nordgard against the Marysville & Northern Railway Company and the Stimson Mill Company. On motion for a new trial after nonsuit. Denied.

John T. Casey, of Seattle, Wash., for plaintiff.

Hughes, McMicken, Dovell & Ramsey, of Seattle, Wash., for defendants.

NETERER, District Judge. The testimony in this case shows that the defendant was a common carrier and was carrying logs on its railroad or logging road from the forests in the state of Washington to Puget Sound; that it employed the plaintiff in such transportation; that the logs were dumped into the waters of Puget Sound, and thereafter a part of the logs were disposed of to various mills on the sound, the remaining logs being taken to the Stimson Mill Company, also on Puget Sound, and there manufactured into lumber. This lumber was piled in the lumber yard, and about 20 per cent. was sold in the local market, and the remainder shipped upon orders thereafter obtained either by rail or boat to various points in the state of Washington and other states and foreign countries. At the conclusion of the testimony, the defendants moved for a directed verdict, and a judgment was entered in favor of the defendants. The matter is now before the court upon a motion for a new trial.

[1] The contention of the plaintiff that the court in granting judgment on the motion for a directed verdict violated the seventh amendment to the Constitution has no merit. The Supreme Court of the United States in an unbroken line of decisions has held that, where the evidence produced at the trial was not sufficient to sustain a verdict, it is the duty of the court not to submit the matter to the jury. This is expressly sustained in Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, cited by the plaintiff, and this rule is adhered to by this court in Bay v. Merrill Lumber Co., 211 Fed. 717, filed February 20, 1914.

Does the testimony show that the defendant was engaged in interstate or foreign commerce, and that the plaintiff was injured while employed in such transportation? If it does, a motion for a new trial must be granted. Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 144; Pedersen v. Del., Lack. & West. Ry., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125.

[2] It is contended that, the local demand not being sufficient to consume all the lumber, it therefore was intended for interstate or foreign shipment. It has been uniformly held by the Supreme Court of

the United States that a commodity is not in interstate commerce until it has entered upon its final passage to another state or foreign country.

"Whenever a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced." The Daniel Ball Case, 10 Wall. 563, 19 L. Ed. 999.

"When the products of the farm or the forest are collected and brought in from the surrounding country to a town or station serving as an entrepôt for that particular region, whether on a river or on a line of railroad, such products are not yet exports, nor are they in process of exportation, nor is exportation begun until they are committed to the common carrier for transportation out of the state to the state of their destination, or have started on their ultimate passage to that state." Coe v. Errol, 116 U. S. 517, 525, 6 Sup. Ct. 475, 477 (29 L. Ed. 715).

"Continuity of movement is the concluding factor in determining whether a commodity has started on its ultimate passage to a foreign state." Sabine Tram Case, 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442.

The logs in issue or their product had not begun to move from the state of Washington to another state or foreign country. The relation of foreign commerce at no time had been acquired. No continuity of movement had at any time been inaugurated. The entire product of the logs not sold to other local mills was accumulated in the millyard of the Stimson Mill Company awaiting orders, either local or foreign, and it cannot be determined whether the product of the logs at the time they were transported, in the act of which the plaintiff was injured, would be intrastate, interstate, or foreign commerce, and this cannot be ascertained until after the orders had been received. There was nothing to prevent all being sold locally or shipped to points within the state, if demand had been made. The shipment of the logs to the waters of Puget Sound and the transporting of a portion of these logs to the Stimson Mill Company, where they were manufactured into lumber, which was afterwards sold, cannot be said to have entered them upon a final journey to their ultimate destination at the time they were transported over the railroad or logging road. How can it be said that the product of the logs was interstate commerce when the Supreme Court of the United States, in Bacon v. Illinois, 227 U. S. 504, 33 Sup. Ct. 299, 57 L. Ed. 615, held where grain was purchased in localities in a number of states and shipped by original owners who were residents of such states and consigned to Philadelphia, New York, and other eastern cities, place of ultimate destination, the owner reserving the right to remove the grain at Chicago for the purpose of weighing, cleaning, inspection, etc., and thereafter the grain to be shipped to consignees at the election of the owner, held that the interstate character was ended when it was temporarily removed from the cars in Chicago for the purpose designated? In the instant case the interstate character had never been initiated.

The authorities cited by the plaintiff are not in point here. Bay v. Merrill & Ring Lumber Co., 211 Fed. 717, filed February 20, 1914.

The motion for a new trial is denied.