(100 South. 665)

### SOUTHERN RY. CO. v. DICKSON.
### (6 Div. 794.)

(Supreme Court of Alabama. April 10, 1924. Rehearing Denied June 19, 1924.)

**1. Commerce ⬅️27(2)—Under federal Employers' Liability Act plaintiff must show defendant engaged in interstate commerce.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) it must be shown that defendant is common carrier by railroad engaged in interstate or foreign commerce.

**2. Evidence ⬅️22(2)—Judicial knowledge that Southern Railway Company is common carrier.**

Supreme Court judicially knows from Const. 1901, § 242, Code 1907, § 5566, and Acts Sp. Sess. 1907, p. 125, as well as from general notoriety, that Southern Railway Company is common carrier, so that such fact need not be alleged or proved in action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

**3. Negligence ⬅️110—Allegation of knowledge of peril necessary.**

Where act not negligent, in absence of actual or imputed knowledge of perilous position, is specified as cause of injury, no breach of duty is shown without allegation of such knowledge, though negligence may be sufficiently alleged in very general terms.

**4. Appeal and error ⬅️1040(10) — Error in overruling demurrer to complaint for omission of necessary allegation held cured by instructions requiring proof.**

Error in overruling demurrer to complaint for omission of allegation that engineer of train knew, or should have known, that plaintiff employed as switchman was in perilous position, *held* cured by clear instructions requiring proof of either fact.

**5. Master and servant ⬅️256(3)—Complaint must show injury in performance of service.**

Complaint in servant's action for injuries must show that he was injured not only while in service or employment of defendant, but while engaged in performance of such service.

**6. Master and servant ⬅️256(3)—Injury in service held sufficiently alleged.**

Complaint in servant's action against railroad for injuries *held* to show that he was injured while engaged in performance of service for which employed, though special service he was employed to do was not alleged.

**7. Master and servant ⬅️137(3) — Showing necessary to recover for injuries by jerk of train.**

In action for injuries to switchman thrown from car by sudden jerk, plaintiff must show that he was thrown from car by sudden, extraordinary, and unusually violent jerk, that such jerk was not necessary incident of operation, and that engineer knew, or had reasonable grounds for believing, that plaintiff occupied such position on car that such movement would probably imperil his safety.

**8. Evidence ⬅️595—Elements of liability not supported by direct evidence must be grounded on conclusions of fact reasonably deducible from evidence.**

Existence of necessary elements of liability, if not supported by direct evidence, must be grounded on conclusions of fact reasonably deducible from evidence to sustain judgment for plaintiff.

**9. Evidence ⬅️597—Findings of fact based on conjecture not upheld.**

Findings of fact, based on conjecture merely cannot be upheld.

**10. Negligence ⬅️134(1)—Insufficient evidence.**

Mere proof that injury could have happened in alleged way does not warrant conclusion that it did so occur, where it can, with equal probability, be attributed to some other cause from same proof.

**11. Negligence ⬅️134(1)—Sufficient evidence distinguished from "conjecture."**

Conjecture is simply explanation consistent with but not deducible as reasonable inference from known facts or conditions, and two or more plausible explanations as to how event happened or what produced it remain conjectures only if evidence is without selective application to any; but if there is evidence pointing to any logical theory of causation there is juridical basis for such determination, notwithstanding existence of other plausible theories with or without support in evidence.

[Ed. Note.—For other definitions, see Words and Phrases, Conjecture.]

**12. Master and servant ⬅️270(16)—Testimony employé was in proper place held admissible.**

In action for injuries to railroad switchman thrown from car by sudden jerk, plaintiff's testimony that he was in proper place for performance of duties at time *held* material, relevant, and competent.

**13. Trial ⬅️84(2)—Objection to evidence held not to call for ruling on admissibility as opinion evidence.**

Objection to evidence as immaterial, irrelevant, and incompetent does not call for ruling on admissibility as opinion evidence.

**14. Evidence ⬅️514(3)—Switchman's opinion that he was in proper place for performance of duties at time of injury held admissible.**

Statements of opinion by qualified expert, such as that of railroad switchman, that he was in proper place for performance of duties at time of injury, are usually *held* admissible.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**15. Evidence ⬅514(3)—Injured switchman's opinion as to whether jerk of train was extraordinary or unusual held admissible.**

In action for injuries to switchman thrown from car by jerk of train, plaintiff was properly allowed to state opinion as to whether jerk was extraordinary and unusually violent.

**16. Evidence ⬅558(3)—Objection to question calling for opinion as to excessive speed held properly overruled.**

In action for injuries to switchman thrown from car by sudden jerk of train, where engineer testified that 25 miles an hour was not usual rate of speed for loaded freight train at certain crossing, and that he was not running that fast at time of injury, objection to question, "That is too fast, is it not, for a freight train with 49 cars to go along Spring street?" on ground that witness had said he did not know what usual speed was, was properly overruled.

**17. Appeal and error ⬅1048(5)—Overruling objection to question held not prejudicial in view of witness' answer.**

In action for injuries to switchman thrown from car by sudden jerk of train, overruling objection to question asked of engineer as to whether it was necessary to suddenly bring about violent jerk at place of injury, to which witness answered, "I didn't do it," held not prejudicial.

**18. Appeal and error ⬅301—Prejudicial effect of question assuming unproved fact to be reviewed must be presented by motion for new trial.**

Prejudicial effect of question to witness as embodying assumption or suggestion of existence of unproved fact cannot be reviewed under assignment of error in overruling objection thereto, but must first be presented to trial court by motion for new trial.

**19. Appeal and error ⬅1058(2)—Exclusion of testimony held not prejudicial in view of witness' subsequent testimony.**

In action for injuries to switchman thrown from car by sudden jerk of train, sustaining objection to question asking flagman to describe how plaintiff acted, and what was done when he came to witness' shanty day or two before accident, held not prejudicial to defendant, where witness afterward testified that plaintiff was walking like dizzy man, and sat down in shanty and went to sleep.

**20. Witnesses ⬅391—Question to impeaching witness held improper as substantial departure from preliminary question propounded to witness sought to be impeached.**

In action for injuries to switchman thrown from car by sudden jerk of train, where defendant's witness, who testified that there was no jerk at time of plaintiff's fall, was asked, for impeachment purposes, whether he stated in plaintiff's presence after injury that engine gave violent jerk "and threw you over against the car," testimony by plaintiff's witness, in answer to question whether he heard defendant's witness say that there was violent jerk of train "which caused you to fall from it," was improperly admitted; question being sub-stantial departure from that propounded to defendant's witness, though both met all requirements as to time, place, and circumstance.

**21. Trial ⬅82—Scope of general objection that sufficient predicate for introduction of evidence for impeachment purpose has not been laid stated.**

Where predicate has been laid for introduction of evidence for impeachment purposes, objection that proper or sufficient predicate has not been laid is only general, and will not be referred to any specific objection which could have been obviated if pointed out at time.

**22. Trial ⬅62(3)—Objection to question as not in rebuttal addressed to court's discretion.**

Objection to question as not in rebuttal is addressed to discretion of trial judge.

**23. Master and servant ⬅270(16)—Question as to violence of jerk of train held irrelevant.**

In action for injuries to switchman thrown from car by jerk of train, question to plaintiff as to whether it jerked with such violence as to jerk his hand loose from grabiron *held* irrelevant.

**24. Trial ⬅84(2)—Objection to question as incompetent held not available for exclusion as calling for conclusion.**

Objection to question to injured switchman as to whether train jerked with such violence as to jerk his hand loose from grabiron as incompetent *held* general objection, not available for exclusion of question, as calling for conclusion invading jury's province.

**25. Master and servant ⬅137(3)—Care required of engineer as to switchman on cars.**

Engineer of freight train may assume that switchman will not place himself in position of special peril; but, knowing that he is stationed on top of car, and accustomed to get off train while moving at certain point, and hence is in position of contingent peril in case of extraordinary jerk of train, is bound to govern himself accordingly.

**26. Master and servant ⬅286(30)—Engineer's negligence as to switchman on cars held for jury.**

Whether engineer of freight train owed switchman stationed on top of car duty to stop train without sudden violent jerk *held* for jury.

**27. Master and servant ⬅293(19)—Instruction on engineer's negligence as to switchman held misleading.**

In action for injuries to switchman thrown from car by sudden jerk of train, instruction that engineer could assume that plaintiff was not in perilous position at time *held* properly refused as misleading, in view of evidence of engineer's knowledge of plaintiff's position on top of car and custom of getting off train while moving.

**28. Trial ⬅252(11)—Instruction as to custom of switching cars without connecting air brakes held properly refused as abstract.**

In action for injuries to switchman thrown from car by sudden jerk of train, instruction that it is usual and customary to switch cars

in railroad yards without connecting and using air brakes on all of cut *held* properly refused as abstract.

**29. Master and servant ⊕291(5)—Instruction as to custom of switching cars held irrelevant.**

In action for injuries to switchman thrown from car by sudden jerk of train, instruction as to custom of switching cars without connecting air brakes on all of cut *held* properly refused as irrelevant.

**30. Trial ⊕228(3)—Instruction as to immateriality of greater probability of one of two or more conjectural theories held properly refused.**

Charge that, if there is nothing more tangible for jury to proceed on than two or more conjectural theories, it is immaterial that theory suggested in plaintiff's interest is more probable than that suggested in defendant's interest, *held* properly refused as unfit in form and phraseology for charge to jury, though sound expression of judicial philosophy; being formula for courts' use in reviewing verdicts.

**31. Trial ⊕131(2)—Objections to counsel's arguments cannot be raised by requested charges.**

Objections to arguments of counsel must be taken when statements are made and cannot be raised by requested charges.

**32. Appeal and error ⊕1005(3)—Weight of conflicting evidence against verdict held not ground for reversal.**

That weight of conflicting evidence on question whether there was sudden and violent jerk of train proximately causing fall of switchman from car was opposed to verdict *held* not ground for reversal, especially where trial judge, who saw and heard witnesses, declined to interfere by granting motion for new trial.

**33. Damages ⊕132(6)—Verdict for $50,000 for broken legs, with resulting operations, confinement, expenses, and loss of earnings, held excessive by $20,000.**

Verdict for $50,000 for compound, fracture of both femurs, resulting in five operations and confinement in hospital for 53 weeks and to bed for about 6 months thereafter, permanent disfigurement, and partial crippling for life, expenditure of $4,000 for treatment, and loss of $150 per month in earnings, *held* excessive by $20,000.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action for damages by H. T. Dickson against the Southern Railway Company for personal injuries. Judgment for plaintiff, and defendant appeals. Affirmed conditionally.

Count 2, upon which the cause was tried, is as follows:

"Plaintiff claims of defendant the sum of $100,000, for that, on, to wit, June 3, 1920, plaintiff was in the service and employment of defendant, and was upon a car which was then and there being used in interstate commerce, and plaintiff was at the time in the employment of defendant in interstate commerce and engaged in the performance of his duties for defendant while such defendant was engaged in commerce between the states of Alabama and Tennessee, and plaintiff was aiding in his employment for defendant in such commerce between the states, and, while plaintiff was engaged in the said performance of his duties for defendant, as aforesaid, he was upon a car, upon a railroad track, which said car was attached to a train of cars pulled by an engine, and in the performance of his duties for defendant it was necessary for plaintiff to be on said car while the said train was in motion, and while the train was in motion as aforesaid, and plaintiff was on said car, the train and car on which plaintiff was riding gave a sudden, violent, unusual, and extraordinary jerk, throwing plaintiff to the ground, breaking both of his legs, severely bruising and injuring him on other parts of his body, causing him great physical pain and mental anguish, causing him to lose much time from his labors and the remuneration he would have received therefor, permanently crippling and deforming plaintiff, and rendering him less able to earn a livelihood for the balance of his life, causing him to spend large sums for nursing, medicine, and medical treatment, and so injuring his body that he will continue to be compelled to spend money for nursing, medicine, and medical treatment. Plaintiff further avers that all of his said injuries and damages were proximately caused by the negligence of the engineer, one Ledford, then and there in charge and control of the engine pulling the train of cars, and acting in the line and scope of his duties as such engineer for the defendant, in that said engineer so negligently operated said engine that plaintiff was injured as aforesaid."

Smith, Wilkinson & Smith, of Birmingham, for appellant.

In this action the complaint, under the federal Employers' Liability Act, must aver that the engineer knew, or was chargeable with notice, of the dangerous situation of the plaintiff at the time of the jerk. St. L. & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 South. 70; W. U. T. Co. v. Howington, 198 Ala. 311, 73 South. 550; L. & N. v. Bouldin, 110 Ala. 185, 20 South. 325; D. C. W. & M. Co. v. Mehaffey, 128 Ala. 242, 29 South. 646; Birmingham Ore Min. Co. v. Grover, 159 Ala. 276, 48 South. 682; Jones v. Munson S. S. Lines Co., 17 Ala. App. 226, 84 South. 415; So. Ry. v. Goins, 1 Ala. App. 370, 56 South. 253. When simple negligence constitutes a cause of action, it is incumbent upon the plaintiff to show by affirmative averment a condition or state of acts upon which the law raises and defines the duty owing from the party charged with negligence to the party it was claimed was injured. T. C. I. v. Smith, 171 Ala. 251, 55 South. 170; M. L. & W. P. Co. v. Thombs, 204 Ala. 678, 87 South. 205; L. & N. v. Holland, 164 Ala. 73, 51 South. 365, 137 Am. St. Rep. 25; Crawford v. McMickens, 190 Ala. 102, 66 South. 712. Under the federal Employers' Liability Act, the

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

complaint must affirmatively show that the defendant was operating a railroad and was a common carrier at the time of the accident. Shade v. N. Pac. Ry. Co. (D. C.) 206 Fed. 353; Bay v. Merrill & Ring Lbr. Co. (D. C.) 211 Fed. 717; The Pawnee (D. C.) 205 Fed. 333; Walton v. So. Ry. Co. (C. C.) 179 Fed. 175; Garrett v. L. & N., 235 U. S. 308, 35 Sup. Ct. 32, 59 L. Ed. 242; 1 Roberts, Fed. Liability of Carriers, § 431; 2 Roberts, Fed. Liability of Carriers, § 682; Jefferson County v. Gulf Refining Co., 202 Ala. 510, 80 South. 798. The possibility that a thing may have occurred is not evidence that it did occur. Payne v. Crawford, 207 Ala. 698, 93 South. 655; Miller Brent Lbr. Co. v. Douglas, 167 Ala. 286, 52 South. 414; John v. Birmingham Ry. Co., 172 Ala. 603, 55 South. 801; Carlisle v. C. of Ga., 183 Ala. 195, 62 South. 759; Southworth v. Shea, 131 Ala. 419, 30 South. 774; Mobile L. & R. Co. v. Roberts, 192 Ala. 486, 68 South. 815. Evidence which only tends to show a sudden and momentary checking of the movement of a freight train by a violent jerk, unexplained, is not sufficient to authorize a jury to infer that the engineer negligently caused the jerk. St. L. & S. F. Ry. Co. v. Dorman, supra; Perkins v. Great Northern, 152 Minn. 226, 188 N. W. 564; Hunt v. C., B. & Q. Ry. Co., 181 Iowa, 845, 165 N. W. 105, L. R. A. 1918B, 369; Cooper v. Wabash Ry., 11 Ind. App. 211, 38 N. E. 823; Beaton v. Great Northern, 123 Minn. 178, 143 N. W. 324; Saunders v. C. & N. W., 6 S. D. 40, 60 N. W. 148; M., K. & T. v. Foreman, 174 Fed. 377, 98 C. C. A. 281. Where the testimony leaves a matter so uncertain that any one of a half dozen things may have brought about an injury, for some of which the defendant might be responsible, as for an act of negligence, and for some of which he would not be so responsible under the complaint as framed, it is not for the jury to guess as to the cause of the injury. Carlisle v. C. of Ga., 183 Ala. 195, 62 South. 759; A. C. I. P. Co. v. Landrum, 183 Ala. 132, 62 South. 757; Patton v. Texas Pac., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Mobile Light & R. Co. v. Roberts, 192 Ala. 486, 68 South. 815. A witness should not be permitted to give his conclusion as to a fact at issue which it was the province of the jury alone to determine. L. & N. v. Fleming, 194 Ala. 51, 69 South. 125; Brandon v. Progress Dist. Co., 167 Ala. 365, 52 South. 640; Weller & Co. v. Camp, 169 Ala. 275, 52 South. 929, 28 L. R. A. (N. S.) 1106; L. & N. v. Bogue, 177 Ala. 349, 58 South. 393; A. G. S. v. Flinn, 199 Ala. 177, 74 South. 246; Clark & Barker v. Eufaula Brick Works, 205 Ala. 545, 88 South. 669; Winslow v. Glendale L. & P. Co., 164 Cal. 688, 130 Pac. 427; Kemp v. Wilson, 17 Ala. App. 224, 84 South. 636; Colley v. Atlanta Brew. & Ice Co., 196 Ala. 374, 72 South. 45; M., J. & K. C. Co. v. Hawkins, 163 Ala. 565, 51 South. 37; Long v. Gwin, 202 Ala. 358, 80 South. 440. Counsel should not be permitted, even upon cross-examination, to propound a question to a witness that assumes any material fact in issue which is to be found by the jury. Haish v. Munday, 12 Ill. App. 539; Reed v. State, 18 Ala. App. 181, 90 South. 37; Myers v. Myers, 111 Iowa, 584, 82 N. W. 961; Howland v. Oakland, etc. Ry. Co., 115 Cal. 487, 47 Pac. 255; People v. O'Brien, 96 Mich. 630, 56 N. W. 72; Conway v. State, 18 Ala. App. 156, 90 South. 46; Pratt Consolidated Coal Co. v. Morton, 14 Ala. App. 194, 68 South. 1015. A witness cannot be improperly impeached by showing a statement inconsistent with his statement on the stand, unless a proper predicate has been laid for such impeachment. Kirkpatrick v. State, 18 Ala. App. 389, 92 South. 238.

Black, Harris & Foster and James G. Davis, all of Birmingham, for appellee.

A general averment of negligence is sufficient. St. L. & S. F. v. Fancher, 1 Ala. App. 295, 55 South. 458; Woodward Irr. Co. v. Steel, 192 Ala. 538, 68 South 473; So. Ry. v. Carter, 164 Ala. 103, 51 South. 147; H. A. & B. v. Miller, 120 Ala. 535, 24 South. 955; B. R., L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280. The courts take judicial knowledge of the fact that the Southern Railway Company is a common carrier. B. & O. v. Reed, 223 Fed. 689, 139 C. C. A. 192; State v. Mo. Pac., 212 Mo. 658, 111 S. W. 500; Cox v. Board, 161 Ala. 639, 49 South. 814. The doctrine of res ipsa loquitur applies to this case. Cent. Vt. v. White, 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1436, Ann. Cas. 1916B, 252; N. O. & N. E. v. Harris, 247 U. S. 367, 38 Sup. Ct. 535, 62 L. Ed. 1167. It was proper for plaintiff to testify he was in his proper place. A. C. L. v. Enterprise Cotton Co., 199 Ala. 57, 74 South. 232. A witness may give a shorthand rendition of facts. Brandon v. Progress Dist. Co., 167 Ala. 365, 52 South. 640; K. C. S. v. Clinton, 224 Fed. 896, 140 C. C. A. 340; Patrum v. St. L. & S. F., 146 Mo. App. 332, 129 S. W. 1041; Ball v. Mabry, 91 Ga. 781, 18 S. E. 64; I. & G. N. v. Collins, 33 Tex. Civ. App. 58, 75 S. W. 814; So. Ry. v. Vandergriff, 108 Tenn. 14, 64 S. W. 481; B. M. v. Wilmer, 97 Ala. 165, 11 South. 886; L. & N. v. Watson, 90 Ala. 68, 8 South. 249. Evidence of witness Armstrong's statement that there was a sudden or violent jerk was admissible. 40 Cyc. 2731; Nelson v. Iverson, 24 Ala. 9, 60 Am. Dec. 442; 9 Ency. Evi. 78; Henderson v. Dreyfus, 26 N. M. 541, 191 Pac. 442; Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073; Clark v. Conway, 23 Mo. 438; State v. Perry, 51 La. Ann. 1074, 25 South. 944; Wigmore on Evi. § 1858; So. Ry. v. Williams, 113 Ala. 620, 21 South. 328. Charge 16 was properly refused. Tex. & Pac. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905. The verdict was not excessive. Otos v. Great Northern, 128 Minn. 283, 150 N. W. 922; L. & N. v. Williams, 183

Ala. 138, 62 South. 679, Ann. Cas. 1915D, 483; I. C. v. Johnston, 205 Ala. 1, 87 South. 866.

SOMERVILLE, J. Of the numerous grounds of demurrer to the complaint only three are now insisted upon. These are: (1) The complaint does not show that the defendant railroad company is a common carrier., (2) It does not show any breach of duty owed to plaintiff, inasmuch as it charges as negligence an act which is not negligent unless the engineer knew, or should have known, that plaintiff was in a place of peril at the time with reference to the act, no such allegation being made. (3) It does not show that immediately at the time of his injury plaintiff was engaged in the performance of the service he was employed to do.

[1] The first objection is, of course, founded on a basic requirement, since the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) under which this action is brought relates only to common carriers by railroad, engaged in interstate or foreign commerce. Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Bay v. Merrill, etc., Co. (D. C.) 211 Fed. 717; Shade v. N. P. Ry. Co. (D. C.) 206 Fed. 353.

[2] That the Southern Railway Company is a common carrier is a fact of such general notoriety that courts may judicially know it, whether as a factor in pleading or in proof. B. & O. R. R. Co. v. Reed (C. C. A.) 223 Fed. 629; State v. M. P. Ry. Co., 212 Mo. 658, 111 S. W. 500; A. G. S. R. R. Co. v. Smith, 209 Ala. 301, 96 South. 239. But, apart from the general principle of judicial knowedge, we know the character and service of this company from the Constitution and statutes of Alabama. Const. Ala. § 242; Code 1907, § 5566; Gen. Acts 1907 (Special Sess.) 125. The Constitution makes all railroad companies in this state common carriers, and the statutes referred to classify this defendant as such by name.

Whether in any case a complaint under the federal act should show that the defendant railroad company is a common carrier we need not here determine. If such a showing be necessary as a general rule, judicial knowledge dispenses with it in the instant case, and the omission of allegation was not an available ground of demurrer. A. G. S. R. R. Co. v. Cardwell, 171 Ala. 274, 55 South. 185.

Upon a review of our cases dealing with the liability of railroad companies for injuries caused by jars or jerks in the operation of their trains we have recently said:

"These cases indicate that the production of sudden jars or jerks in the movement of trains may be held as negligent only when they are violent enough to naturally and probably result in injury to some one on the train who is known to be, or to probably be, in a position of peril from such a movement; and when they are unnecessary under the circumstances of the particular case." S. L. & S. F. R. R. Co. v. Dorman, 205 Ala. 609, 89 South. 70.

[3] Our cases very clearly support the proposition that, when the act which caused the injury is specified, and is not negligent in itself, but only when the actor was chargeable with knowledge that some one was in a position of peril with respect to consequences, no breach of duty is shown without an allegation that the actor had such knowledge or was so chargeable. L. & N. R. R. Co. v. Bouldin, 110 Ala. 185, 200, 20 South. 325; W. U. T. Co. v. Howington, 198 Ala. 311, 73 South. 550; Mobile, etc., Co. v. Bell, 153 Ala. 90, 93, 94, 45 South. 56. See, also, So. Ry. Co. v. Carter, 164 Ala. 103, 107, 108, 51 South. 147, wherein the principle is well discussed, though not raised as a matter of pleading.

This, of course, does not deny the rule that negligence may be sufficiently alleged in very general terms. But negligence comprehends and rests upon a breach of duty; and, when the injurious act is specified, it must be made to appear, either from the nature of the act, or from the accompanying circumstances, that a duty existed of which the act complained of was a breach. We think the complaint was subject in this respect to the apt ground of demurrer interposed.

[4] We cannot, however, for this cause, reverse the judgment, for the reason that the omitted allegation was nevertheless made an issue on the trial, and the jury were clearly and specifically instructed (by charges 20, 22, and 23) that plaintiff could not recover unless he showed that the engineer operating the train "knew, or in the exercise of reasonable care ought to have known, that the plaintiff was in or would probably be in a position of peril at the time the jerk and shock was caused, if it was caused." Under the rule declared in Best Park & Amusement Co. v. Rollins, 192 Ala. 534, 68 South. 417, and a long line of cases following it, the error in overruling the demurrer must be held as cured by the clear instructions requiring proof of the omitted allegation. That such a complaint states a cause of action, notwithstanding the omission of this allegation, was held in Southern Ry. Co. v. Carter, 164 Ala. 103, 51 South. 147.

[5] As for the third objection to the complaint, while we are not insensible to the ingenuity of its reasoning, we think it is too artificial and refined to deserve judicial favor. It was necessary for the complaint to show not only that plaintiff was injured while in the service or employment of defendant, but also that he was injured while engaged in the performance of the service he

was employed to do, or which was imposed upon him by his employment. St. L. & S. F. R. R. Co. v. Dorman, 205 Ala. 609, '89 South. 70, and cases therein cited.

[6] An analysis of the complaint in this case will show that it fairly meets this requirement, though its syntax is certainly subject to criticism.

The case of S. L. & S. F. R. R. Co. v. Sutton, 169 Ala. 389, 55 South. 989, Ann. Cas. 1912B, 366, strongly relied on by appellant in this connection, can be readily distinguished from the instant case. There the complaint alleged merely that plaintiff "was upon said train engaged in or about the said business of defendant [i. e., operating an engine and train on its railway]." It did not allege that plaintiff was engaged in the performance of his own duties, and for that reason it was held as subject to the demurrer. In sharp contrast, the complaint here alleges that plaintiff "was engaged in the performance of his duties for defendant"— a very vital difference. It is not necessary in such a complaint to show what special service the plaintiff was employed to do, the essential fact being the concurrent performance of the service, whatever it may have been.

Counsel misconceive the ruling in Going v. Southern Ry. Co., 192 Ala. 665, 69 South. 73. The brief exhibits amended count 6, as to which no question was raised, whereas the excerpt from the opinion is condemnatory of the original count.

In Adams v. Southern Ry. Co., 166 Ala. 449, 51 South. 987, the complaint alleged no more than that plaintiff's intestate was injured while "in the service or employment of defendant as switchman," and is obviously not an authority supporting the criticism of this complaint. The other cases relied on present the same difference of allegation.

[7] In order to recover in this case it was necessary for plaintiff to show: (1) That he was thrown from his position on top of the car by a jerk or jar; (2) that this jerk or jar was sudden, extraordinary, and of unusual violence; (3) that it was caused by the act of the engineer in his operation of the train; (4) that it was not a necessary incident of such operation; and (5) that at the time of its causation the engineer knew, or had reasonable grounds for believing, that the plaintiff then occupied such a position on one of the cars that such a movement would probably imperil his safety.

[8] The first and second of these elements are supported by the testimony of plaintiff, and the fourth by the testimony of the engineer. The third and fifth elements are not supported by any direct evidence, and their existence must therefore be grounded upon available inferences—conclusions of fact reasonably deducible from the evidence. The existence vel non of these two elements of liability under the evidence adduced presents the most serious and difficult of the controverted questions in the case.

Counsel's insistence is that, conceding the fact of the jerk or jar, the evidence shows that it might have been the result of any one of four distinct agencies: (1) The jamming of the air; (2) the sticking of the brakes; (3) the rolling up of the slack (there being 49 cars in the train); or (4) the act of the engineer—and that, as to any causative action by the engineer, the affirmative conclusion required could not be grounded on anything more than conjecture.

[9, 10] As this court has often declared, findings of fact based on conjecture merely cannot be upheld. Southworth, Adm'x, v. Shea, 131 Ala. 419, 30 South. 774; Miller-Brent Lbr. Co. v. Douglas, 167 Ala. 286, 52 South. 414; John v. Birmingham Realty Co., 172 Ala. 603, 55 South. 801; Carlisle v. C. of G. Ry. Co., 183 Ala. 195, 62 South. 759; Dorman's Case, supra. As said in Southworth, Adm'x, v. Shea:

"Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause."

[11] But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.

We have examined with critical care the testimony bearing upon these questions and issues; and, while it might fail to reasonably satisfy our minds that any negligent act of the engineer—that is, any act not necessarily incidental to the operation of his train, causing a sudden and violent jerk or jar to the cars, and done with notice of the probable presence of plaintiff in a place of peril while serving at his post of duty on one of the hindmost cars—proximately caused plaintiff to be thrown from the train and injured, yet we think the evidence, especially the testimony of plaintiff, his fellow employé, Gaffney, and the engineer, Ledford, is sufficient to support such a finding. We would like to review the evidence in detail, but space does not permit, and the statement of our general conclusion must suffice. We

think that the general affirmative charge for defendant was properly refused.

[12-14] The plaintiff was allowed to state that at the time he was thrown from the car he was in his proper place for the performance of his duties. The only objection to the question was that the evidence was immaterial, irrelevant, and incompetent. This objection was not well taken, and does not call for a ruling upon the question of admissibility as opinion evidence, the objection argued in brief. It may be observed, however, that such statements of opinion by a qualified expert are usually held as admissible. 22 Corp. Jur. 685, note 45, citing, among other cases, A. C. L. R. R. Co. v. Enterprise, etc., Co., 199 Ala. 57, 74 South. 232. See, also, Helton v. Ala. Mid. Ry. Co., 97 Ala. 281, 12 South. 276.

[15] The plaintiff was properly allowed to answer the question "whether, in your opinion, this was only an ordinary jerk incident to the proper handling of all railroad freight trains, or whether it was an extraordinary, unusual, and unusually violent jerk?" B'ham Min. R. R. Co. v. Wilmer, 97 Ala. 165, 11 South. 886. In point, also, are Webster v. A. C. L. R. R. Co., 81 S. C. 46, 61 S. E. 1080, 1085; Mullen v. Galveston, etc., R. Co. (Tex. Civ. App.) 92 S. W. 1000; Healy v. Visalia, etc., R. R. Co., 101 Cal. 585, 36 Pac. 125; Southern Ry. Co. v. Vandergriff, 108 Tenn. 14, 64 S. W. 481; Ball v. Mabry, 91 Ga. 781, 18 S. E. 64; K. C., etc., Ry. Co. v. Clinton, 224 Fed. 896, 899, 140 C. C. A. 340.

[16] Defendant's engineer Ledford testified that 25 miles an hour was not the usual rate of speed for a loaded freight train to run at the Spring street crossing, and that he was not running that fast on this occasion. Thereupon plaintiff's counsel queried: "It is too fast, is it not?" Defendant's objection to this question was sustained. Counsel then asked: "That is too fast, is it not, for a freight train with 49 cars to go along Spring street?" This was objected to on the ground that the witness had said he did not know what the usual speed was, and this objection was overruled. This being the only ground of objection stated, and the record showing the contrary, the trial court cannot be put in error for overruling it.

[17, 18] In cross-examining Ledford counsel asked him the question: "It was not necessary for you to suddenly bring about a violent jerk of the car at that place where this man was hurt?" Defendant's objection being overruled, the witness answered: "I didn't do it." The assignment of error is based on the action of the court in overruling the objection, and, since the answer was negative, the ruling cannot be held as prejudicial. Under such an assignment of error we cannot review the prejudicial effect of the question on the minds of the jury as embodying an assumption or suggestion by counsel of the existence of an unproved fact, and thus unfairly creating a false impression. Such matters as that should be first presented to the trial court by motion for new trial, and can come before this court for review in no other way.

[19] Defendant's witness Fly, a flagman, testified that plaintiff came to his shanty a day or two before the accident, at about six p. m. On plaintiff's objection, the trial judge excluded the ensuing question: "Will you describe to the jury how he acted, and what was done?" Defendant's counsel stated that they expected to show by this witness that he (plaintiff) "came in there and acted dizzy, and lay down and went to sleep for an hour." The bill of exceptions recites that the witness then testified that "Mr. Dickson was walking like a dizzy man when he came up there; he came into the shanty and sat down and went to sleep, and slept an hour —something like that." Conceding, without deciding, that the testimony offered was admissible, we think the statement of the witness, as afterwards made, was fairly commensurate, and left no ground for complaint.

[20, 21] Defendant's witness Armstrong had testified that he was on the last car in the train at the time plaintiff fell off, and that there was no jerk or jar at that time. For the purpose of impeachment, plaintiff's counsel asked the witness if he stated to Mr. Davis at St. Vincent's Hospital, about nine months after Dickson was hurt, and in Dickson's room and presence, "that the engine gave a very violent jerk and threw you over against the car, on the night that Mr. Dickson fell from the train and was injured;" to which the witness replied that he did not that he remembered. Thereupon Dickson was recalled, and stated that he was present when a conversation was had, as stated, by Armstrong and Davis. His counsel then asked him this question: "Did you hear Mr. Armstrong say, in substance, to Mr. Davis, at that time and place, that there was a sudden or violent jerk of the train, which caused you to fall from it at the time you were injured?" Defendant objected to the question "on the ground that a proper predicate had not been laid and no time and place had been fixed." The objection being overruled, the witness said that he heard Armstrong make that statement. Unquestionably, we think, the question propounded to Dickson was a substantial departure from the preliminary question propounded to Armstrong, though both questions met all requirements as to time and place and circumstance. No doubt the trial judge interpreted the objection as one to time and place only, as to which alone it was specific. The authorities very generally hold, and we think with good reason, that, where a predicate has in fact been laid for the introduction of evidence, the admissibility of which depends upon the preliminary proof, the objection that a proper or a sufficient predicate

has not been laid is a general objection merely, and will not be referred to any specific objection which could have been obviated if pointed out at the time. People v. Conkling, 111 Cal. 616, 44 Pac. 314, 316; State v. Perry, 51 La. Ann. 1074, 25 South. 944; Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073; Henderson v. Dreyfus, 26 N. M. 541, 191 Pac. 442; State v. Soule, 14 Nev. 453; 9 Ency. Ev. 78; 38 Cyc. 1380.

In the instant case the discrepancy between the two questions could have been easily obviated if it had been called to the attention of the court and counsel by a specific objection. Under these circumstances we cannot put the trial court in error for overruling the general objection.

[22-24] Plaintiff's counsel were allowed to ask him, with reference to the movement of the train: "Did it jerk with such violence as to jerk your hand loose from that grabiron?" The only objections to the question were that it was not in rebuttal, and was incompetent, irrelevant, and immaterial. The first ground was addressed to the discretion of the trial judge; the objection of irrelevancy was obviously not good, and that of incompetency was but a general objection, not available for exclusion of the question, for that, as argued in brief, the answer would be a conclusion of the witness, and an invasion of the province of the jury. That objection, to be available, should have been specifically stated. Gilley v. Denman, 185 Ala. 561, 64 South. 97; Bruce v. Sierra, 175 Ala. 517, 57 South. 709, Ann. Cas. 1914D, 125; Mills v. Hudmon & Co., 175 Ala. 448, 57 South. 739; Johnston v. Johnston, 174 Ala. 220, 57 South. 450.

[25-27] Charge 16, refused to defendant, is as follows:

"If you believe the evidence in this case the court charges the jury that the engineer Ledford on the occasion complained of had a right to assume that the plaintiff was not in a position of peril at the time it is alleged that the plaintiff fell or was thrown from the train, and that said engineer had a right to handle his train and regulate the movement of the train acting on that assumption."

It is clear that this instruction, if given, would have been in effect a general affirmative charge for defendant. The evidence tends to show that the engineer knew that the switchmen—including plaintiff—were stationed on top of the cars, and that at the point of the accident they were accustomed to get off the train while moving, as was this train, at about 20 or 25 miles an hour. Their stations on top of the cars, and their positions while in the act of debarking, were not positions of special peril under ordinary conditions, but might be made so by extraordinary movements of the train. The engineer might, of course, assume that plaintiff would not place himself in a position of special peril; but if he knew that plaintiff was in a position of contingent peril with respect to extraordinary movements of the train he was bound to govern himself accordingly. As said by the federal Supreme Court in a somewhat similar case:

"When the particular and known condition of the train makes a sudden bump obviously dangerous to those known to be on top of the cars, we are not prepared to say that a jury would not be warranted in finding that an easy stop [or slacking of speed] is a duty." T. & P. Ry. Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905.

The charge in question would have been highly misleading, at least, and we think it was properly refused.

[28, 29] Charge 15, refused to defendant, instructing the jury "that it is usual and customary in switching cars in railroad yards to do such switching without connecting and using air brakes on all of a cut of cars being so switched," etc., was properly refused as abstract there being no evidence of what was usual and customary in such cases. The fact, moreover, was not relevant to any issue in the case.

Charge 14, refused to defendant, was also abstract, and otherwise faulty.

[30] Charge 18, refused to defendant, is as follows:

"If, after a fair consideration of the evidence, there is nothing more tangible for the jury to proceed upon than two or more conjectural theories, it is immaterial that the theory which is suggested in the interest of the plaintiff is more probable than that which is suggested in the interest of the defendant."

This statement, taken from the text of 4 Labatt on Master and Servant, was quoted with approval in S. L. & S. F. R. R. Co. v. Dorman, 205 Ala. 609, 615, 89 South. 70. It is a sound expression of judicial philosophy, but is obviously unfit in form and in phraseology to be given in a charge to a jury. It is in fact a formula for the use of courts in reviewing the verdicts of juries. We think it was properly refused.

[31] The bill of exceptions recites that one of counsel for plaintiff stated in his argument to the jury that plaintiff's life would be shortened by his injuries. There was no claim in the complaint for damages on that account, and counsel for defendant, without objecting to the argument, requested an instruction that plaintiff could not be given any damages therefor. Our decisions have settled the rule that objections to the arguments of counsel must be taken when the statements are made, and cannot be raised by requested charges. B. R., L. & P. Co. v. Morris, 163 Ala. 190, 50 South. 198; L. & N. R. R. Co. v. Holland, 173 Ala. 675, 689, 55 South. 1001. The case of Bradley v. Walker, 207

Ala. 701, 93 South. 634, as the opinion points out, is not in conflict with this rule.

It remains to consider the merit of the motion for new trial.

[32] In our judgment the weight of the evidence, having due regard for the interest of the witnesses, is opposed to the verdict of the jury. The chief conflict, of course, is upon the question of whether there was or was not a sudden and violent jerk or jar of the train preceding plaintiff's fall, in the relation of proximate cause and effect. Plaintiff's affirmative statement was directly and entirely contradicted by that of the engineer, and of the switchman, Armstrong, who was on top of the last car in the train, and to some extent by the testimony of the switch foreman, Gaffney, who was on the ground about 30 feet from the train. We are not willing, however, in such a case, to deny the validity of the jury's verdict on the ground that it is opposed to the overwhelming weight of the evidence, or is palpably wrong, especially where the trial judge, who saw and heard the witnesses, has declined to interfere.

[33] Plaintiff's injuries consisted of a compound fracture of both femurs; he underwent five operations, and was confined in the hospital for 53 weeks. After leaving the hospital he was confined to his bed for about 6 months. His sufferings were of necessity extremely severe. At the time of the trial one leg had healed, but the other still required drainage. He is permanently disfigured as to the posture of his legs, and apparently partially crippled for life. It does not appear that he will always suffer pain, nor that he will be entirely deprived of the ability to work and earn in some vocation suited to his condition. He expended some $4,000 during his treatment at the hospital and at home, and has lost $150 per month, which he was previously earning.

We have considered all of the evidence with studious care, and our conclusion is that the verdict of the jury awarding $50,000 is greatly excessive, notwithstanding the extremity of plaintiff's injuries and sufferings. No doubt the jury were overwhelmed with a feeling of horror and sympathy, and undertook to compensate him on the basis of what a sound man might be willing to undergo his injuries and endure his sufferings for. Courts, however, must deal with such cases in a practical rather than in a sentimental and sympathetic way, and, all things considered, we think that $30,000 will be a sufficient award.

If, within 30 days from this date, the plaintiff enters a remittitur of $20,000 on the records of this court, the judgment for the balance of $30,000, with interest from the date of the judgment below, but without the statutory penalty of 10 per centum, will be affirmed. Otherwise the verdict and judgment will be set aside, and the cause remanded for another trial.

Affirmed conditionally.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.