Plyworld, Inc., was the lessee of a showroom and warehouse which was totally destroyed *Page 1364 
by a fire, believed to have been set by an arsonist.
St. Paul Fire and Marine Insurance Company paid the owners of the building the policy limits under a policy of insurance and, being subrogated to the rights of the owners, sued Plyworld, claiming that Plyworld negligently maintained a fire door on the premises, thereby allowing the fire to spread from the warehouse to the showroom.
The jury returned a verdict in favor of St. Paul and assessed its damages at $24,000. Plyworld appeals claiming, (1) that the evidence was legally insufficient to establish that it was guilty of negligence which proximately caused the loss and (2) that the trial court erred in allowing into evidence testimony and other facts as to conditions of the fire door both before and after the time of the fire, because it was not first made to appear that the conditions were substantially the same on the two occasions. The facts, succinctly stated, are as follows:
On March 18, 1974, the leased building, consisting of a combination warehouse and showroom, located in Birmingham, was totally destroyed by fire. A large warehouse to the rear was constructed of wood. The front showroom was masonry block. A masonry block wall separated the warehouse from the showroom, and a steel fire door was installed for the purpose of closing off the entrance way from the warehouse to the showroom.
The fire door was on tracks, and when operable was held open by weights. The weights were suspended by any kind of suitable rope or twine and a "fusible link" would form part of the suspension system. The fusible link was designed so that when the temperature from a fire would increase to a certain level, the link would melt causing the rope or suspension system to break, thus releasing the holding effect of the weights, permitting the door to roll on the tracks to a closed position due to its own weight or gravity.
The leased premises were owned by Allen K. and Mary H. Wood and were insured for loss by fire by St. Paul.
Before trial, Plyworld, made a motion in limine that the plaintiff not be allowed to mention or prove that on several occasions prior to the date of the fire the Birmingham Fire Department had issued or threatened citations to Plyworld with regard to the condition of the fire door. The grounds assigned in support of the motion in limine were that such evidence would be immaterial, irrelevant and would have no bearing on the condition of the fire door at the time of the fire or shortly before the fire; in particular, it was argued that the evidence of the prior condition of the fire door as found by the Birmingham Fire Department was entirely too remote and would be very prejudicial to the defendant. After arguments, the motion in limine was overruled and the trial proceeded, and concluded with the jury verdict in St. Paul's favor.
 I
Plyworld's argument that the jury's verdict was reached by basing an inference on an inference is not supported by the record. The primary issue before the jury was whether Plyworld had negligently maintained the fire door. Evidence was introduced at trial that the fire door was blocked by a chain and that no fusible link, which would have permitted the proper operation of the fire door, was found in the debris. Of course, this evidence was disputed.
St. Paul introduced evidence that the use of a chain to block the proper operation of the door was not necessarily typical of an arsonist. Plyworld introduced evidence which showed that arsonists typically block a fire door to prevent its operation. The jury apparently believed St. Paul's version of what happened.
As this Court said in Land v. Niehaus, 340 So.2d 760 (Ala. 1976),
 "When proof in a negligence suit reveals a state of facts, whether controverted or not, from which different inferences and conclusions may be reasonably drawn, the resolution of the question is one for the jury. * * * The jury's *Page 1365 
verdict will not be disturbed, not being plainly erroneous or manifestly unjust." [citations omitted.] [emphasis supplied.]
The Land decision also answers Plyworld's contention that the proof which goes no further than to show that the fire damage could have occurred in an alleged way does not warrant the conclusion that it did so occur where from the same proof the fire damage can with equal probability be attributed to some other cause. In other words, Plyworld contends that the jury's verdict is based on mere conjecture and cannot be reasonably explained. As this Court said in Southern Railway Co. v.Dickson, 211 Ala. 481, 100 So. 665 (1923):
 "* * * There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."
We think that there was sufficient evidence from which the jury could have found that Plyworld undertook to maintain the fire door and negligently failed to do so, and that this negligence proximately caused the fire loss to the showroom. Therefore, the evidence was sufficient to prove the fact in issue.
 II
Plyworld further argues that it was error to allow the jury to consider evidence concerning prior inspections by the Birmingham Fire Department and to allow the introduction of pictures depicting the chain attached to the fire door in such a way as to block its proper operation. What Plyworld basically relies on is that line of cases which holds that if a party, in an effort to show negligence, attempts to introduce evidence as to conditions before or after the time of the accident, it must be first made to appear that the conditions were substantially the same on the two occasions. Holley v. Josey, 263 Ala. 349,82 So.2d 328 (1955).
At the outset, the record clearly shows that the evidence concerning the prior inspections by the Birmingham Fire Department was not introduced to prove negligence, but was allowed to prove identity of ownership or control over the fire door and that Plyworld undertook to maintain the fire door. The rule expressed by Josey is inapplicable. See Norwood Clinic v.Spann, 240 Ala. 427, 199 So. 840 (1941). And, as stated inLeeth v. Roberts, 295 Ala. 27, 322 So.2d 679 (1975):
 "* * * In cases where the testimony does not go directly to the ultimate issue of liability, * * * the Josey court concluded that the right of cross-examination * * * would amply protect the defendant. * * *"
Similarly, Plyworld argues that the trial court erred when it allowed St. Paul to introduce photographs taken after the fire. Again, Plyworld relies on Josey saying that St. Paul did not predicate the introduction of the photographs with evidence that the conditions had not changed. The photographs in question were taken within a few hours after the fire began and the testimony was that no one had entered the area or disturbed the door after the fire began. As this Court noted in Leeth, this type evidence should be corroborated by proof that the condition had not been changed. Plyworld was allowed to take St. Paul's witness on voir dire. The record shows and the trial judge had before him sufficient evidence to justify his allowing the photographs to be introduced.
We find no prejudicial error in permitting St. Paul to show the prior inspections, under the facts of this case. Neither do we find prejudicial error in allowing the photographs taken after the fire to be introduced into evidence.
The judgment is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur. *Page 1366