These cases come to this Court on consolidated appeals, and involve the issue of whether the trial court erred in entering summary judgment in favor of the defendant in negligence and breach of lease actions filed against it by the plaintiffs. The claims grew out of a fire at an apartment complex in Montgomery where the plaintiffs lived.
 FACTS
On October 21, 1987, responding to a complaint made by plaintiff Julie Strickland, who was a tenant in Colony Apartments, Paul Pritchett and Marian Sheffield, two employees of the apartment complex, arrived at Strickland's apartment in order to repair her heating system. Although Ms. Sheffield accompanied Pritchett into Ms. Strickland's apartment, most of the actual repair work performed on the heating system was done by Pritchett. In an effort to repair the heating system, Pritchett had to work on a transformer relay and a fan motor located inside the apartment's furnace, as well as work on a thermostat located on the wall. Following Pritchett's repairs to the heating system, and soon after he and Ms. Sheffield left the apartment, a fire broke out in a crawl space located between the ceiling of Ms. Strickland's apartment and the floor of the apartment immediately above her. The fire was eventually extinguished by the fire department, but Ms. Strickland's apartment and other apartments nearby suffered damage.[1]
In their complaints, the tenants/plaintiffs asserted that Colony Apartments Company, Limited (hereinafter "Colony"), through its employee, Pritchett, negligently performed repairs on Ms. Strickland's heating system and thereby caused the fire that damaged their apartment units.[2] Furthermore, the plaintiffs asserted that Colony had breached its leases with them by failing to maintain the apartment complex and its equipment in a safe and working order, a duty that the plaintiffs claimed was breached by Colony when the fire broke out in the crawl space. In its motion for summary judgment, Colony asserted that there was no genuine issue of material fact as to the "proximate cause" of the apartment fire or as to a "breach" of the leases. Accompanying its motion, Colony submitted Pritchett's affidavit detailing his activities while he was inside Ms. Strickland's apartment. Colony also submitted selected excerpts from deposition testimony given by Ms. Sheffield; Lt. Brown and Capt. Maddox, arson investigators for the City of Montgomery Fire Department; Dallas Mitchell, an electrical inspector for the City of Montgomery; and Charles Kelly, a retained fire investigation expert for the plaintiffs. Colony asserted that Pritchett's affidavit, along with the accompanying deposition testimony, showed, as a matter of law, that there was not a genuine issue of material fact as to the proximate cause of the apartment fire or as to a breach of the leases. The plaintiffs asserted that the evidence before the trial court, although admittedly circumstantial in nature, provided substantial evidence as to each of the elements of their negligence and breach of lease counts against Colony. The trial court granted Colony's motion for summary judgment. After the trial court denied their motion to alter, amend, or vacate the judgment, the plaintiffs filed their notices of appeal.
 QUESTION PRESENTED
The only issue in these appeals is whether summary judgment was proper for Colony. The plaintiffs contend that they presented "substantial evidence" as to each element of their negligence and breach of lease actions against Colony.[3] *Page 807 
The applicable rule of review is found in Rule 56(c), A.R.Civ.P. Summary judgment is proper when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."
 I
One of the elements that a plaintiff must establish in any negligence action, of course, is "proximate cause." A plaintiff must establish the existence of a nexus between the action of the defendant and the subsequent injury or damage sustained by the plaintiff. Where the plaintiff fails to show that the action of the defendant "proximately caused" his injury or damage, then an action for negligence cannot be sustained as a matter of law.
In West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989), this Court, construing Ala. Code 1975, §12-21-12, stated that "substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."
In Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794,798 (Ala. 1989), this Court noted:
 "The act abolishing the scintilla rule does nothing to change the procedure for handling the burden of proof, so if the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden still shifts to the non-movant; however, the burden is now greater than in the past, because the non-movant must show 'substantial evidence' in support of his position."
In its motion for summary judgment, Colony asserted that the plaintiffs failed to provide "substantial evidence" that Pritchett's actions during his repair of Ms. Strickland's heating system "proximately caused" the fire that broke out in the crawl space. In support of that position, Colony presented deposition testimony from fire investigation experts who, it asserted, could only speculate as to the "proximate cause" of the fire that damaged the plaintiffs' apartments. In his deposition, Lt. Brown, an arson investigator with the City of Montgomery Fire Department, testified that the fire was "in the space, crawl space, between the ceiling of the first floor and floor of the second floor area," and that "[i]n [his] opinion, it was most likely electrical." He testified that he did not know "what actually started the fire . . . [b]ut from all the indications we got and burn patterns that I could see, you know, my experience is that it started as electrical in that area [i.e. the crawl space]." He testified that, in his opinion, the fire was "accidental," that is, that it was not arson. When questioned specifically concerning the cause of the fire, he testified:
 "Q. So, in your opinion, the cause of the fire was electrical in origin?
"A. Yes, sir.
 "Q. But you can't tell me exactly what electrically caused the fire in terms of —
"A. No, sir.
"Q. Do you understand what I'm asking?
"A. Yes.
 "Q. You can't tell me whether it was, for example, say, exposed wire or possible splicing of wires or the use of an electrician's snake;[4] you couldn't tell me definitely which one of those, if any, created the electrical problem which you believe started the fire?
"A. No." *Page 808 
Lt. Brown testified that he could not "definitely" say that Pritchett caused the fire, but he did say the following:
 "A. Depending on what he [did] in that area, yes, sir. He could have, you know, nicked the wire, stretched the wire out. You know, there's a lot of things that could cause an electrical fire."
Capt. Maddox, the other arson investigator assigned to inspect the apartment fire, testified to the following in his deposition:
 "Q. All right. Now, I believe you stated that Mr. Pritchett had done some work in or about the area of the furnace at the time of the fire. Is that what he stated to you?
 "A. Yes, sir. He [Pritchett] stated to me that from the time he left [Ms. Strickland's apartment] until the time he got me, until we received the call, was approximately 30 minutes.
 "Q. Did he say he had done any other work other than on the furnace itself?
 "A. He [Mr. Pritchett] just said he worked on the furnace. He said that he changed out the base of the thermostat, he changed out the fan motor, and he changed out a relay.
 "Q. Can you tell me that any work that Mr. Pritchett might have done in that regard definitely caused this fire?
"A. Could I say that what he did could have?
"Q. Definitely did cause the fire.
"A. I can't say it definitely did, no.
"* * * *
 "Q. This is a hypothetical. Assume that an electrician's snake was used to pull wires through the crawl space within several hours before the fire, okay. Assuming that, can you say that that definitely caused this fire?
 "A. I can't say it definitely did. I couldn't rule it out. I would say it's a probability.
"* * * *
 "Q. And then based upon the electrical malfunction or source of ignition, based upon that, what do you think, in your opinion, is the probable cause of the ignition? Based upon the fact that the repair man [Mr. Pritchett] was there working on it, the origin of the fire, the close proximity to the heater or the area where he was working, all of those factors, what do you think, in your opinion, was the probable cause?
 "MR. COONER [defense counsel]: I object to the form.
 "A. On the probable exact cause, I can't answer that.
 "Q. Not exact but the probable cause, in your opinion, as an opinion.
 "A. I feel like, as an opinion, it was something that the maintenance man [Mr. Pritchett] did running the wires, either pulling the wires or cutting the wires, that contributed to the fire."
(Emphasis added.)
Marian Sheffield, who accompanied Mr. Pritchett into Ms. Strickland's apartment and aided him in the repair of the heating system, testified to the following in her deposition:
 "Q. Did Paul [Pritchett] ever tell you that he knew what had caused the fire?
"A. No, Paul never did comment.
 "Q. Did he ever give an opinion as to why the fire started?
 "A. He just said that he hoped it wasn't anything he had done.
"Q. But he didn't know for sure?
"A. He didn't know for sure.
"* * * *
 "Q. When he [Mr. Pritchett] replaced the motor, the fan motor, did he have to disconnect all of the wiring?
"A. Yes, you disconnect everything.
 "Q. Disconnected all these wires in the junction box?
"A. Right.
 "Q. Were you holding the light for him during all the period of time he was working on it?
"A. The whole time.
 "Q. This wire, the one particular wire that he said that he pulled to see where it went, did it go up into the ceiling?
"A. Yes.
"Q. That's the one that he cut?
"A. Yes. *Page 809 
"Q. And did he say he didn't know what that was?
"A. He said he didn't know where it went to."
Dallas Mitchell, an electrical inspector for the City of Montgomery who also investigated the apartment fire, testified to the following in his deposition:
 "Q. Okay. Do you believe that it's possible that any malfunction, from whatever cause, in the furnace was a contributing cause to this fire?
 "MR. VOLZ [plaintiffs' counsel]: I object to the form.
"A. No, I don't think so.
 "Q. And did you also have occasion to examine the crawl space where you believe the fire started?
"A. Yes.
 "Q. Were you able to determine what had happened up there that provided the combustion for the fire?
 "A. The only thing that we found in that area up there that would be a probable cause was the electrical. That's the only thing we found in there.
 "Q. Could you say definitely that the fire was caused by electrical malfunction?
"A. No, sir, I sure couldn't.
 "Q. Then would it be your testimony that even if, in fact, electrical malfunction were the cause of the fire, that you would not be able to identify the particular malfunction which caused the fire?
 "MR. VOLZ [plaintiffs' counsel]: I object to the form.
"A. That's correct.
"* * * *
 "Q. At the time you completed your investigation of the fire scene, were you at that time able to definitely say what caused this fire?
"A. No, sir.
 "Q. Are you now able to make such a statement as to what caused this fire definitely?
"A. No, sir."
Charles Kelly, the plaintiffs' fire investigation expert, testified to the following in his deposition:
 "Q. I have just a couple more, if I could. We talked here just a minute ago, I believe, about Mr. Pritchett, the maintenance man, allegedly having used an electrician's snake; is that correct?
 "A. I'm basing that on the fire department having found one. Now, as to whether or not Mr. Pritchett did, I can't testify to that.
 "Q. Even assuming that he had, can you say that his use of the snake was definitely the cause of this fire?
 "A. No, sir, I can't say it. But I will say that based on the area where the fire occurred, that the wiring hadn't been upset in that area. It's possible, the scenario of this, that it could have set the conditions up right there that caused the fire.
"* * * *
 "Q. Is it true then that you cannot tell me today that you know definitely what caused that fire?
"A. That's correct."
The trial court, in its order granting Colony's motion for summary judgment, stated that "the plaintiffs [had] failed to introduce substantial evidence" that Colony had "proximately caused" the fire that damaged the plaintiffs' apartments.[5]
 II
As a general rule, "summary judgment is rarely appropriate in negligence actions, which almost always present factual issues of causation and of the standard of care that should have been exercised. Tolbert v. Gulsby, 333 So.2d 129 (Ala. 1976)."Yarborough v. Springhill Memorial Hospital, 545 So.2d 32, 34
(Ala. 1989). Of course, if there had been no evidence presented concerning the origin of the fire, the probable cause of the fire, and the other circumstances surrounding the fire, then summary judgment might have been appropriate. *Page 810 
This Court, in Hollis v. Brock, 547 So.2d 872 (Ala. 1989), upheld a summary judgment in a case in which the plaintiffs claimed that the defendants had been negligent in allowing a fire to break out. In that case, however, this Court noted the following:
 "[T]he Hollises also claim that the Edwardses negligently caused the fire by not maintaining the wiring in their building and that the Edwardses negligently allowed the fire to spread by not maintaining a fire wall between the two buildings. Again, no evidence of the fire's origin was produced; there was nothing to show that it was caused by the wiring or another possible defect in the building. As to the fire wall, there was no evidence produced that the fire wall was owned by the Edwardses or that an opening in that fire wall contributed to the spread of the fire. All that the Hollises produced against the Edwardses were the Hollises' own depositions, wherein they claimed that the wiring was faulty and was the cause of the fire, even though they were not experts and they had never even been in the Edwardses' building. Such speculation or conjecture is wholly insufficient to warrant submission of the case to a jury. Thompson v. Lee, 439 So.2d 113, 116
(Ala. 1983). The trial court was correct in granting the Edwardses' properly supported motion for summary judgment."
547 So.2d at 873.
Although this Court stated in Brown Mech. Contractors, Inc.v. Centennial Ins. Co., 431 So.2d 932, 942 (Ala. 1983), that "[t]he mere possibility that a careless act caused damage is not itself sufficient to find proximate cause," and, moreover, stated in Bogle v. Scheer, 512 So.2d 1336, 1340 (Ala. 1987), that "[s]peculation and conclusory allegations are insufficient to create a genuine issue for trial," we conclude that those principles of law do not support the summary judgment in the present cases.
In these cases, the plaintiffs produced evidence that the fire was of an electrical origin, that it originated in the place, or in an area immediately adjacent to the place, where the defendant's employee had been making electrical repairs within 30 minutes of the discovery of the fire.
Although the plaintiffs' experts testified that they could not definitely state that the defendant's employee caused the fire, a definite statement of that nature is not necessary to defeat a motion for summary judgment. Findings of facts cannot be based upon mere conjecture, of course,[6] but it is also clear that direct evidence is not necessary to prove negligence on the part of a defendant and that proof of negligence may be established completely through circumstantial evidence. Greenv. Reynolds Metals Co., 328 F.2d 372 (5th Cir. 1964); Elba WoodProducts, Inc. v. Brackin, 356 So.2d 119 (Ala. 1978); Harbin v.Moore, 234 Ala. 266, 175 So. 264 (1937); Southern Ry. v.Dickson, 211 Ala. 481, 100 So. 665 (1924). This Court has recognized that although the evidence may present no direct proof of negligence by the defendant, negligence does not require direct proof but may be inferred by a jury from the circumstances out of which the injury arose. Mobile PressRegister, Inc. v. Padgett, 285 Ala. 463, 233 So.2d 472 (1970). A fact is established by circumstantial evidence *Page 811 
if it can be reasonably inferred from the facts and circumstances adduced. May v. Moore, 424 So.2d 596 (Ala. 1982);State v. Ludlum, 384 So.2d 1089 (Ala.Civ.App. 1980).
After a thorough review of the record, we conclude that the learned trial judge erred in entering the summary judgment for Colony as to the negligence claim.
The plaintiffs' breach of lease actions are contingent upon a finding that Pritchett's repair of Ms. Strickland's heating system proximately caused the fire;[7] consequently, our determination that the trial court erred in entering the summary judgment as to the negligence claims leads us to the conclusion that the trial court erred in entering Colony's summary judgment as to the breach of lease claims as well.
The judgment of the trial court is due to be reversed and the causes remanded for further proceedings consistent with this opinion.
89-664 — REVERSED AND REMANDED.
89-665 — REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] The other tenants/plaintiffs whose apartments were damaged as a result of the fire were Amy Bell, Belinda Payne, June C. Brown, and Pam Cook.
[2] Two separate complaints were filed by the tenants against Colony Apartments. The trial court consolidated the two cases for trial pursuant to Rule 42(a), A.R.Civ.P.
[3] Because this lawsuit was filed after June 11, 1987, the "substantial evidence rule" applies. See Ala. Code 1975, §12-21-12 (1989 Supp.).
[4] An "electrician's snake" is a device consisting of a stiff cable that is passed through an otherwise inaccessible area, and which attaches to wires located in that inaccessible area. Once the snake is attached to those wires, it is then pulled by its holder so that the once-inaccessible wires can be retrieved by the holder. In his affidavit offered into evidence, Mr. Pritchett denied using an electrician's snake on the day that he repaired Ms. Strickland's heating system. Furthermore, Mr. Pritchett stated that he never "pulled, pushed, installed, cut, spliced or in any way" came into contact with any wiring located in the crawl space where the fire apparently began.
[5] Despite the plaintiffs' assertion that the trial court's summary judgment failed to adjudicate their breach of lease claim against Colony, this Court concludes that the trial court's order was written broadly enough to amount to an entry of summary judgment for Colony on that count.
[6] This Court has written:
 " 'Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.'
 "But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."
Southern Ry. v. Dickson, 211 Ala. 481, 486, 100 So. 665, 669
(1924). (Quoting Southworth, Adm'x v. Shea, 131 Ala. 419,30 So. 774 (1901).)
[7] The leases had a provision that stated: "The landlord agrees to . . . maintain all equipment and appliances in safe and working order."