**C.D. LOTT, Plaintiff,**

v.

**C & W TRUCKING, INC., et al., Defendants.**

**Civil Action No. 97–T–1123–N.**

United States District Court, M.D. Alabama, Northern Division.

Dec. 9, 1997.

---

James R. Bowles, Bowles & Cottle, Tallassee, AL, for C.D. Lott.

Wayne Morse, David W. McDowell, Clark & Scott, Birmingham, AL, for C & W Trucking, Inc.

David W. McDowell, Clark & Scott, Birmingham, AL, for C & W Transport, Inc.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff C.D. Lott, a dairy and beef farmer, initiated this lawsuit by filing a complaint

in the Circuit Court of Elmore County, Alabama, alleging that he suffered damages to his cow herd after they were fed bulk hominy feed delivered by the defendants C & W Trucking, Inc. and C & W Transport, Inc. (collectively, "C & W"), and manufactured and marketed by two other defendants. After Lott voluntarily dismissed the manufacturer and marketer defendants, C & W timely removed the lawsuit to this court based upon complete diversity of citizenship among the parties, pursuant to 28 U.S.C.A. §§ 1332, 1441 and 1446.

This case is currently before the court on the motion to exclude non-expert and circumstantial evidence to demonstrate causation, filed by C & W on November 7, 1997. For the following reasons, the court will deny C & W's motion.

## I. BACKGROUND

On or about January 30, 1996, C & W Transport delivered a load of hominy feed to Lott's dairy farm. Lott alleges that the feed was contaminated with scrap metal that had been introduced during delivery as a consequence of the truck driver's failure to sweep out the delivery truck's storage area after having hauled a previous load of such metal. According to Lott, his herd of cattle suffered numerous deaths and injuries after it was fed the allegedly contaminated feed, as a result of the cows' ingestion of the metal scraps.

In its pending motion, C & W seeks generally to exclude the following testimony: (1) non-expert or layperson testimony on the medical or veterinary causation of the alleged illnesses suffered by Lott's cattle, and (2) expert testimony on medical or veterinary causation that does not produce a reasonable probability or certainty that a causal link exists between the feed supplied by C & W to Lott's farm and his cattle's alleged illnesses. The specific evidence targeted by C & W's motion that Lott intends to introduce at trial is as follows: (1) testimony by Lott to establish that the number of "unexplained" cattle deaths in his herd substantially increased during the year after it was fed the allegedly contaminated feed; (2) testimony by Lott that there was a concomitant increase in breeding problems, including stillbirths, during that year; (3) testimony by Lott that the herd suffered a "drastic and unexplained" decrease in milk production after it was fed the allegedly contaminated feed; and (4) testimony by Lott's primary treating veterinarian, Dr. Gatz Riddell, that the most probable cause of the foregoing injuries was the herd's consumption of C & W's feed, in the absence of any other plausible explanation.

## II. ANALYSIS

■■■ The pending motion concerns a question of witness competence, and, consequently, requires that the court determine as a threshold matter whether federal or state evidence law governs its analysis. Rule 601 of the Federal Rules of Evidence provides the answer to this question, stating that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with state law." As this court noted in *Barton v. American Red Cross*, 829 F.Supp. 1290, 1299 (M.D.Ala.1993), *aff'd*, 43 F.3d 678 (11th Cir.1994) (table), "This proviso means, in general, that state law governs the competency of a witness where the proof is directed at a substantive issue governed by state law." Here, Alabama provides the substantive law governing Lott's tort law claims of wantonness and negligence, and thus witness competency issues are also resolved under Alabama state law principles.

C & W bases its motion to exclude on three primary arguments, none of which withstands close scrutiny under the governing principles of Alabama law. First, C & W argues that expert testimony by Dr. Riddell is inadmissible to the extent that he cannot testify that there is a reasonable degree of medical or veterinary probability that the allegedly contaminated feed caused the specific illnesses suffered by the cattle. Pointing to Dr. Riddell's deposition testimony, C & W contends that he can satisfy this standard for admissibility only as to three cows, and thus the court should exclude any testimony by him at trial regarding the other seven cow deaths and the 17 stillbirths for which Lott seeks damages in this action.

In the second primary argument underlying its motion, C & W urges the court to exclude testimony by Lott or any other lay witness pertaining to the medical or veteri-

nary causation of the illnesses allegedly suffered by Lott's cattle. C & W asserts that Alabama law precludes such testimony, requiring that all evidence of medical causation be based upon expert witness testimony. Finally, in its third argument, C & W argues that no circumstantial evidence, whether based upon lay or expert witness testimony, may be used to establish medical or veterinary causation in this case. In support of this contention, C & W distinguishes the issue of negligence, which may be established via circumstantial evidence, from medical causation, which according to C & W may not be so established under Alabama law.

i. Exclusion of Expert Testimony That Fails to Establish a Reasonable Probability of Causation

■ C & W's contention that an expert witness's testimony must be excluded where it does not tend to demonstrate a reasonably probable, rather than a possible or conceivable, causal link between the defendant's alleged negligence and the plaintiff's injury betrays a misapprehension of fundamental precepts of Alabama evidence law. C & W cites myriad decisions, from Alabama state courts and elsewhere, to establish that merely conjecturing or raising the possibility that the defendant's action resulted in the injury are insufficient to establish proximate causation in negligence actions. The court readily agrees with this assessment of the case law. However, C & W's argument is misplaced because the question facing the court is not whether Lott's evidence of causation is sufficient to carry the case to the jury, or to support a verdict in his favor, where such considerations are relevant. *See D.A.C. By and Through D.D. v. Thrasher,* 655 So.2d 959, 961 (Ala.1995) ("[W]hen the evidence leaves it uncertain as to whether the cause of the injury was something for which defendant was responsible, or something for which it was not responsible, there is a failure of proof, and the jury cannot be permitted to guess at the real cause. And the mere possibility that the negligence of the defendant caused the injury without evidence thereof, is not sufficient to carry the case to the jury, or to support a verdict.") (quotation marks and

citations omitted). Rather, here the court must determine the *admissibility*, not the sufficiency, of Dr. Riddell's testimony. To resolve this question, the court must turn to the relevant portions of the Alabama Rules of Evidence.

Rule 702 of the Alabama Rules of Evidence, which took effect on January 1, 1996, provides as follows:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The advisory committee notes accompanying Rule 702 have this to say about the scope of admissible evidence under the rule:

"Historically, expert witnesses have been have been permitted to give opinions only upon subjects that are held to be beyond the understanding of the average layperson. The theory underlying this common law principle is that the jurors, on subjects of common knowledge, are just as qualified to draw their own conclusions and it would be a preemption of their role and function to allow an expert to testify as to those subjects. See Ala.Code 1975, § 12–21–160 (superseded by adoption of the present rule). Rule 702, identical to the corresponding Federal Rule of Evidence, changes the focus from whether the subject of the testimony is beyond common understanding to whether the expert's opinion or testimony will assist the trier of fact. Under this rule it is possible that an expert opinion or testimony on a question of common knowledge would be admitted by the trial judge as helpful to the trier of fact."

Ala.R.Evid. 702 advisory committee's note. Thus, the question of whether Dr. Riddell's testimony regarding the medical or veterinary causation of the injuries to Lott's cattle should be admitted turns on whether it would assist the jury in its determination of the proximate causation issue.[1] The resolution of this question is left "largely to the discre-

---

**1.** Because C & W does not appear to contest Dr. Riddell's qualifications as an expert witness, the court will not address that question.

tion of the trial judge." Ala.R.Evid. 702 advisory committee's note.

■ The court concludes that the proffered testimony of Dr. Riddell certainly will aid the jury in deciding whether the allegedly contaminated feed caused the various deaths and illnesses suffered by Lott's herd. As both parties appear to agree, the determination of what caused the cows to die or become sick is one that implicates difficult questions of veterinary science, which most likely would be beyond the common knowledge of lay jury-members. *See Stewart v. Lowery,* 484 So.2d 1055, 1058 (Ala.1985) (noting that an expert physician who has treated a patient can give his opinion as to the nature, cause, and extent of the patient's condition).

C & W does not contest the fact that expert testimony would help the jury to decide the complex question of medical causation. Rather, it asserts in essence that testimony not rising to the level of establishing a reasonable probability of causation would not be helpful to a jury, because proof of causation requires more than mere possibilities. However, the court is not aware of, nor does C & W cite, any case law that supports its position that expert testimony must be excluded from trial because a party alleges that the expert would not be able to testify with the degree of certainty required to send the question to the jury or to support the jury's ultimate verdict. In fact, although the court has found no Alabama decisions directly on point, it notes that courts in other states have explicitly rejected this contention. *See Purina Mills, Inc. v. Odell,* 948 S.W.2d 927, 936 (Tex.App.—Texarkana 1997) (in a case cited by C & W addressing consumption of metal-contaminated feed, the court observes

that under Texas law it is not necessary for an expert witness to testify as to a reasonable medical or veterinary probability for the testimony to be admissible, although such a showing is required to support the ultimate finding of causation); *Hodson v. Mawson,* 227 Ga.App. 490, 489 S.E.2d 855, 857 (Ga.Ct. App.1997) (rejecting argument that expert testimony should have been excluded because treating physician merely stated that there was a possible connection between an accident and the plaintiffs' injury, rather than that the connection was reasonably probable); *McCarley v. West Quality Food Serv.,* 948 S.W.2d 477, 479 (Tenn.1997) (in (human) food poisoning case, court rejects argument that a physician's inability to exclude all other possible sources of contamination made the testimony mere speculation, holding that this fact affects weight, not admissibility, of the expert's testimony).

■ The court does note that Alabama courts have excluded expert testimony that is based on mere speculation or conjecture. *See Alabama Power v. Robinson,* 447 So.2d 148, 153–54 (Ala.1983). Thus, to the extent that the opinions expressed by Dr. Riddell in his testimony at trial are not premised on more than speculative or conjectural grounds, the court will not admit such testimony.[2] At this stage of the proceedings, however, the court is not in a position to determine which, if any, aspects of Dr. Riddell's testimony would fail to satisfy this threshold requirement for admissibility. C & W will of course have an opportunity at trial to object to any of Dr. Riddell's testimony as impermissibly conjectural or speculative, and the court will determine at that time whether the testimony is supported by an adequate foundation.[3]

---

**2.** In *Robinson,* the Alabama Supreme Court provided the following explanation of what is meant by "conjecture" in this context:

"as a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference."

447 So.2d at 153–54. In *Bell v. Colony Apartments Co.,* 568 So.2d 805, 810 n. 6 (Ala.1990), the court shed additional light on this concept:

"There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if

there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in evidence."

*Id.* (quoting *Southern Ry. v. Dickson,* 211 Ala. 481, 100 So. 665, 669 (Ala.1924)).

**3.** The record before the court suggests that C & W could prevail on a claim at trial that testimony by Dr. Riddell concerning any cattle not subject to his physical examination should be excluded as speculative or conjectural. However, as stated, the court will reserve judgment on this issue

It bears reiterating, however, that the court declines C & W's invitation to exclude all testimony that does not rise to the level of demonstrating a reasonable probability that the allegedly contaminated feed was the medical cause of the cattle's injuries. So long as Dr. Riddell's testimony cannot be said to be merely conjectural or speculative, it will be admitted even if he can only testify as to the possibility that such a causal link exists.

The court also notes that the weight accorded Dr. Riddell's testimony as to causation will remain, of course, for the jury to decide. *See* Charles W. Gamble, McElroy's Alabama Evidence § 127.02(8) (5th ed.1996) (further noting that only in rare instances, not applicable here, is expert testimony binding upon the jury). Thus, insofar as his testimony raises only the possibility that cattle became ill as a result of the C & W feed, rather than establishes this fact to a reasonable probability or as a certainty, C & W will have an opportunity to elicit testimony to this effect on cross-examination, and the jury will be permitted to discount Dr. Riddell's testimony or otherwise take his relative uncertainty into account in deciding the ultimate question of proximate causation.

ii.  Exclusion of Non–Expert Testimony Regarding Medical Causation

In its second argument in support of the motion to exclude, C & W contends that the court should refuse to admit any testimony by Lott himself or any other layperson regarding the medical or veterinary causation of the illnesses suffered by his cattle. The court will not reach the merits of this contention, however, because it appears to be premised on C & W's misunderstanding of the type of lay testimony regarding his alleged losses that Lott intends to proffer at trial.

■ The court does not discern from the record that Lott intends to introduce lay testimony regarding the alleged causal relationship between the feed and the cows' injuries. Rather, it appears that Lott merely intends to testify about the number of cows in his herd that perished in the year after the allegedly-contaminated feed was consumed, the other ill effects suffered by the cows

during that period of time, and the decrease in milk production that he alleges to have been brought on by the consumption of the feed. These are fact issues about which Lott is completely competent to testify.

Lott gives no indication that he expects to introduce lay testimony, by himself or anyone else, that the cattle's ingestion of metal-laden feed was the medical or veterinary cause of the cows' various symptoms. Instead, it appears from his brief that he will rely exclusively upon Dr. Riddell for this testimony.

Accordingly, the court will not reach the question of whether Lott may introduce lay testimony for the purpose of establishing that the allegedly contaminated feed medically caused the injuries to his cattle herd. The purposes for which Lott apparently intends to introduce lay testimony, as explained above, constitute an appropriate use of such testimony and raise no need for expert opinions. If, however, Lott does attempt at trial to use the testimony of a non-expert in medical or veterinary science to establish the cause of his cows' deaths, illnesses or decreased milk production, the court will be required to address at that time the question raised by C & W's motion to exclude non-expert testimony of medical causation.

iii.  Exclusion of Circumstantial Evidence Regarding Medical Causation

Finally, C & W seeks to exclude by its motion all circumstantial evidence of medical or veterinary causation, arguing that although such evidence may form the basis for an inference of negligence, Alabama courts have never permitted the fact-finder to infer medical causation on the basis of circumstantial evidence.

Although C & W does not describe with clarity the specific evidence proffered by Lott that it seeks to exclude, this argument appears to be aimed at any medical-causation evidence not derived from Dr. Riddell's direct physical examination of Lott's cows. Thus, C & W apparently urges the court to exclude, for instance, testimony by Dr. Riddell or anyone else to the effect that, in view

until it has an opportunity learn the basis upon which Dr. Riddell will testify at trial about the

deaths and illnesses of the non-physically-examined cattle.

of evidence that certain physically-examined cows had died as a result of metal ingestion, one could infer that the unexplained deaths or illnesses of other cows not subject to direct physical examination were caused by the allegedly contaminated feed.

The authorities cited by C & W to support its position that circumstantial evidence tending to establish medical causation is inadmissible are unconvincing. Rather than relying upon decisions that discuss the relationship between circumstantial evidence and medical causation, C & W simply cites Alabama cases standing for the unremarkable proposition that proof of negligence may be established through circumstantial evidence, and then attempts to distinguish proof of negligence from proof of medical causation without citing a single decision in support of this distinction, or even proffering a single argument for why such a distinction should be made.[4]

Because the court is aware of no Alabama authority counseling exclusion of circumstantial evidence regarding medical causation, it rejects C & W's argument. Dr. Riddell will be permitted to testify as to his expert opinion regarding the cause of the deaths and illnesses suffered by Lott's cattle, even if such testimony is based upon circumstantial evidence, so long as it is not merely speculative or conjectural, as explained above.[5] Additionally, Lott or another lay witness may testify as to facts, such as the number of his cattle that died or became ill after exposure to the C & W feed and their apparent symptoms, that may form the circumstantial basis for Dr. Riddell's expert testimony regarding medical or veterinary causation.

Accordingly, it is ORDERED that the motion to exclude non-expert and circumstantial evidence to demonstrate causation, filed by defendants C & W Trucking, Inc. and C & W Transport, Inc. on November 7, 1997, is denied.

---

4. C & W does cite a decision, *Reynolds v. S & D Foods*, No. 91–1442–PFK, 1993 WL 61822, *6 (D.Kan.1993), in which the district court held that under Kansas state law circumstantial evidence may be used to establish medical causation, but that such evidence "must tend to negate other reasonable causes and 'justify an inference of probability as distinguished from mere possibility.'" (quoting *Werth v. Makita Elec. Works*, 950 F.2d 643, 651 n. 9 (10th Cir.1991)).

5. The propriety of admitting such testimony is illustrated by *Carruth v. Pittway Corp.*, 643 So.2d 1340, 1343–44 (Ala.1994), in which the Alabama Supreme Court affirmed the admissibility of expert opinion testimony based upon circumstantial evidence. In that case, a fire prevention expert was permitted to testify as to his opinion that a smoke detector had been affixed in a "dead air space" which smoke from a fire could not readily reach. The expert appears to have had no direct evidence that smoke from the fire at issue did not reach the detector quickly enough to sound an alarm, but rather inferred this fact from the position of the detector and his knowledge of dead-air-space dynamics. In rejecting an argument that the expert's testimony was inadmissible because he could not be sure that smoke did not penetrate the area in which the detector was positioned, the court observed that "by its very nature expert testimony is frequently in terms of hypothesis and probability, rather than in terms of certainties." *Id.* at 1344.