810 So.2d 756 (2001)
Ex parte MOBILE POWER AND LIGHT COMPANY, INC.
(Re Safeco Insurance Company v. Mobile Power and Light Company, Inc.)
1992129.
Supreme Court of Alabama.
July 13, 2001.
*757 Thomas M. Galloway, Jr., and Thomas O. Gaillard III of Galloway, Smith, Wettermark & Everest, L.L.P., Mobile, for petitioner.
Hugh C. Henderson, Birmingham, for respondent.
MOORE, Chief Justice.
Safeco Insurance Company ("Safeco") had issued a homeowner's policy to Audrey Loyd and Brenda Loyd, husband and wife. The Loyds, along with Safeco (apparently suing as a subrogee; see Rule 17(a), ¶ 2, Ala. R. Civ. P.), sued Mobile Power and Light Company, Inc. ("Mobile Power"), claiming that negligence on the part of Mobile Power had caused a fire in 1996 that destroyed the Loyds' home. The trial court entered a summary judgment for Mobile Power. Safeco appealed. The Court of Civil Appeals reversed. Safeco Ins. Co. v. Mobile Power & Light Co., 810 So.2d 752 (Ala.Civ.App.2000). We granted Mobile Power's petition for certiorari review. We reverse and remand.
On August 20, 1996, a fire consumed Audrey and Brenda Loyd's home. This was the third fire the Loyds had suffered at the same home in a two-year period. In 1994, a fire heavily damaged their home. In 1996, a second fire erupted in the Loyds' panel box "only a few months prior to the [August 1996] fire." (C. 63.) The Loyds hired Mobile Power, a private company, to repair their electrical system after the 1994 fire. In his deposition, George *758 Casellas, an expert technical consultant hired by Safeco to investigate the third fire, stated that a "fused disconnect" had been replaced after a second fire. (C. 63.) Mobile Power was not involved in the second repair.
After the third fire, Safeco apparently paid the Loyds' claim under their homeowner's insurance policy and was subrogated to their interest. As subrogee, Safeco sued Mobile Power, alleging that Mobile Power had negligently repaired the electrical wiring in the Loyds' home and that its negligence had caused the August 1996 fire.
Mobile Power moved for a summary judgment. The trial court initially denied its motion. Later, the court granted it. Safeco appealed from the summary judgment. This Court transferred the appeal to the Court of Civil Appeals. That court, with Judges Crawley and Thompson dissenting, reversed the summary judgment and remanded for further proceedings. We granted certiorari to consider Mobile Power's claim that the decision of the Court of Civil Appeals conflicted with Bell v. Colony Apartments Co., Ltd., 568 So.2d 805 (Ala.1990), on which the Court of Civil Appeals had relied.
The Mobile County Building Inspection Department issued Mobile Power all three of the permits required for its work on the Loyds' home after the 1994 fire. Ted Blunt, a licensed master electrician and an inspector for the Inspection Department for 18 years, personally conducted the "rough-in" and "service-release" inspections. At the rough-in phase, Blunt approved the overall plans, the type and size of the wire to be used, and the installation methods to be used. (C. 34.) At the service-release phase, Blunt tested the circuits and authorized the activation of power to the Loyds' residence. (C. 34.) John Freil, another inspector for the Department, conducted the final inspection. (C. 35.) Blunt testified that all of the work conformed to the National Electrical Code, which he said had been adopted by Mobile County. (C. 41.) Blunt further testified that Mobile Power's work did not breach any applicable standard of care. (C. 14-16 and C. 48.) Mobile Power performed no other work for the Loyds after their house passed the Department's final inspection in December 1994.
Safeco hired George Casellas, an expert technical consultant, to conduct an investigation into the cause and origin of the third fire. Casellas reported that the third fire began in the circuit breaker/disconnect panel of the ventilation closet. (C. 18.) At his pretrial deposition, he testified that the heating that caused this third fire might have developed over a period ranging from two hours to a couple of weeks, but he could not determine with any certainty "what happened there." (C. 20-22.) Casellas attributed the last fire to one of three possible defects: (1) improper lug torque during installation, (2) mechanical failure of the screwed lug, or (3) thermal shrinkage of the conductor inside the lug. (C. 63.) Casellas gave an affidavit that stated that "a previous electrical fire [the second fire] had taken place [in the Loyds' panel box] only a few months prior to the subject fire occurrence." (C. 63.)
Under Rule 56(c), Ala. R. Civ. P., a motion for summary judgment is to be granted only if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. See, e.g., System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala.1996). Reviewing a summary judgment, "[t]his Court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant." Id., at 420. Once Mobile Power made a prima facie showing that it was entitled to *759 a summary judgment, the burden then shifted to Safeco to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 798 (Ala. 1989). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
In Bell, supra, this Court quoted Yarborough v. Springhill Memorial Hospital, 545 So.2d 32, 34 (Ala.1989): "[A] summary judgment is rarely appropriate in negligence actions, which almost always present factual issues of causation and of the standard of care that should have been exercised." In Bell, Amy Bell sued the owner of her apartment complex for damages, based on a fire that had occurred 30 minutes after 2 employees of the complex had made electrical repairs inside her apartment. The defendant moved for a summary judgment, and the trial court granted its motion. This Court reversed the summary judgment and remanded the case, holding that the circumstantial evidence presented by Bell was sufficient to create a genuine issue of material fact. This Court stated:
"Findings of fact cannot be based upon mere conjecture, of course, but it is also clear that direct evidence is not necessary to prove negligence on the part of a defendant and that proof of negligence may be established completely through circumstantial evidence."
Bell, 568 So.2d at 810. The Court of Civil Appeals apparently premised its opinion in this present case on the doctrine of res ipsa loquitur.
"The elements of res ipsa loquitur are generally stated as:
"(1) [T]he defendant must have had full management and control of the instrumentality which caused the injury; (2) the circumstances must be such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the management had not been negligent; (3) the plaintiff's injury must have resulted from the accident."
Khirieh v. State Farm Mut. Auto. Ins. Co., 594 So.2d 1220, 1223 (Ala.1992) (citations omitted).
We disagree with the Court of Civil Appeals' reliance on Bell. First, the defendant in Bell had performed electrical work for Bell 30 minutes before the fire began. Here, the defendant had performed electrical work for the Loyds approximately two years before the fire. Second, the defendant in Bell had had exclusive management and control of the electrical panel box just before the fire began. In the Loyds' case, an unidentified third party had repaired the Loyds' electrical panel box in 1996 by replacing the "fused disconnect"after the second fire and before the third one. (C. 63.) Mobile Power did not perform this work. Proof of that intervening work, as well as the intervening two-year period, established that Mobile Power lacked the exclusive management and control required for Safeco to successfully invoke the doctrine of res ipsa loquitur. Third, the evidence in Bell placed in question whether the defendant's employees were licensed electrical contractors, whereas the evidence in this present case established that Mobile Power's employees were licensed electrical contractors.
In addition, we note that Casellas's testimony on behalf of Safeco was, at best, speculative. Blunt's testimony withdrew any factual basis for Casellas's testimony. In Ex parte Diversey Corp., 742 So.2d 1250 (Ala.1999), this Court wrote:

*760 "Many years ago, this Court gave an excellent explanation of the problem caused when a party presents speculative testimony to prove causation:
"`"Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause." [Southworth v. Shea, 131 Ala. 419, 421, 30 So. 774, 775 (1901).]
"`But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.' "Southern Ry. v. Dickson, 211 Ala. 481, 486, 100 So. 665, 669 (1924)."
742 So.2d at 1254 (emphasis added).
In his affidavit, Casellas attributed the third fire in 1996 to a "high-resistance fault." (C. 63.) Casellas claimed that a "glowing connection" probably caused the high-resistance fault and that the high-resistance fault then caused the fire. Casellas attributed the glowing connection and the resulting high-resistance fault to one of three possible defects: "[I]mproper lug torque during installation, mechanical failure of the screwed lug, or thermal shrinkage of the conductor inside the lug." (C. 63.)
During his deposition, Casellas testified:
"A. I think that's pretty straightforward. The fire patterns and the extent of damage points [sic] to that location [the panel box].
"Q. And what would you think would cause the problem there, that it wasn't tight?
"A. Well, it was a glowing connection, which is typically forensic terminology for that, which is basically that you haveand it's quite common in lugs. And it's very common when you have copper-aluminum connections because withafter a period of time of heating, the aluminum wire in the course ofof the operation of a normal system, the aluminum wiring will retract and consequently the disconnection [sic] will become loose .... and that creates what is called a high-resistance fault."
(C. 18.)
During his deposition, Blunt, the inspector for Mobile County, testified:
"Q. And more specifically, there's a claim that in that panel box where they claim the fire originated, there was an aluminum wire connection to a copper-aluminum lug in that box. Have you seen that type of connection before?
"A. Well, sure. Most panels have terminations that are proper or suitable for copper and aluminum connections, meaning that you can use copper wire with them or aluminum wire. Most all the panelsmost panels are of that type.
"Q. So if that was the type of connection used in this case, would there be anything improper about that?
"A. No, sir, not as long as it's done properly.

*761 "Q. And that wouldn't have breached any standard of care by the electrical contractor?
"A. No, sir. Not to my knowledge.
"Q. The plaintiffs claim that this aluminum wire connected to the copper-aluminum lug had some type of glowing effect that was created by a loosened connection there that somehow created a heating effect. Is that something that's possible or that you've seen before?
"A. During the time we perform inspections, we look for terminations to determine whether they're tight and secure. During the time of the inspection, obviously the termination was tight and secure. But what could have happened later or for whatever reason is something that we can't ascertain at this time.
"Q. So if it loosened over time or if somebody came in and loosened it, you wouldn't have any opinion as to how that could have occurred?
"A. No, sir. Nor the reason.
"Q. So the fact that they used this type of connection does not mean that the electrical contractor himself violated any kind of standard of care?
"A. No, sir. Where it's a proper type of connection, proper type of wire, and proper size of wire.
"Q. And, in your opinion, it was done properly in this case?
"A. Yes, sir. Based on what we saw at that time."
The trial court correctly relied on the testimony of Casellas and Blunt in entering the summary judgment for Mobile Power. Casellas's deposition and affidavit, taken in the light most favorable to Safeco, were speculative at best. Mobile Power was potentially responsible only under the first of Casellas's three possible scenarios. As for the second and third possibilities, no conceivable negligence by Mobile Power could have caused a mechanical failure of the screwed lug or a thermal shrinkage of the conductor inside the lug. Safeco presented no evidence indicating that the first possibility was any more probable than the other two. Furthermore, Blunt's deposition established that Mobile Power used proper lug torque during installation; that precluded the first of Casellas's three possible causes for the fire. The combined testimony of Casellas and Blunt failed to prove that the possibility of improper lug torque was more than conjecture. This Court has stated:
"There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination...."
Southern Ry., supra, 211 Ala. at 486, 100 So. at 669, and Diversey Corp., supra, 742 So.2d at 1254.
As to the Loyds' August 1996 fire, no evidence "point[ed] to any one theory of causation indicating a logical sequence of cause and effect." Casellas's three scenarios thus remained purely unsubstantiated conjecture. The trial court correctly concluded that Safeco had not presented substantial evidence creating a genuine issue of material fact.
Safeco failed to present substantial evidence that would support a finding that negligence on the part of Mobile Power caused the third fire at the Loyds' home. The judgment of the Court of Civil Appeals is reversed, and this case is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
*762 HOUSTON, SEE, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs specially.
JOHNSTONE, J., recuses himself.
LYONS, Justice (concurring specially).
Mobile Power relies on inspector Blunt's testimony indicating that the connections were tight at the time of his inspection. Safeco responds by showing that Blunt's examination occurred during the first inspection (at the time of "rough-in"), and by showing that building-code regulations require that at the final inspection the panel covering this wiring must be closed, thus preventing further examination of the wiring at that time. Safeco also points to evidence indicating Mobile Power, before turning on the electrical power, failed to perform a test that would have disclosed any loose connection. Safeco suggests that conditions observed by Blunt could have changed during the interval between the rough-in inspection and the completion of the work. During this interval, Mobile Power was ostensibly in control of the electrical system. Because Safeco offered no evidence indicating that some force was applied to the connection during the interval, the only basis upon which Mobile Power could have been held liable would be the doctrine of res ipsa loquitur. See Khirieh v. State Farm Mut. Auto. Ins. Co., 594 So.2d 1220, 1223 (Ala.1992). However, as the main opinion notes, subsequent events prevent Safeco from proving the res ipsa loquitur requirement of full management and control of the instrumentality that caused the damage.