PITTMAN, Judge,
dissenting.
I respectfully dissent because I do not believe that the dependents satisfied their burden of proving, by a preponderance of the evidence, see Aa.Code 1975, § 25-5-81(c), that the cause of Charles Fluellen’s death was “thermal injuries due to a motor-vehicle incident with fire.”
Hornady Transportation, LLC, objected to the admission of Dr. Samuel Simmons’s cause-of-death opinion (and the two official documents derived from that opinion) on two grounds: that they were based on hearsay statements in the EMS report and that they were inconsistent with the undisputed facts of the case. The trial court overruled the objection, admitted the challenged evidence, and ultimately determined that Fluellen’s death was an accident compensable under the Workers’ Compensation Act, § 25-5-51 et seq., Aa. Code 1975. I believe that the trial court erred in admitting and relying on Dr. Simmons’s opinion because that opinion was based on a factual premise that was unsupported by any evidence in the case, even assuming the admissibility of the statements contained in the EMS report.
It is undisputed that, in deciding whether to issue an amended autopsy report and death certificate, Dr. Simmons and his colleagues accepted the physical findings and *248 results of toxicological tests upon which Dr. Cynthia Gardner’s autopsy report had been based. That is to say, Dr. Simmons did not perform a new autopsy. He accepted the data derived from Dr. Gardner’s autopsy but determined that a different conclusion as to the cause of Fluellen’s death should be drawn from that data, based solely upon witness statements that had not been available to Dr. Gardner when she issued her autopsy report. Because the scientific data underpinning Dr. Gardner’s autopsy report were not in dispute, any new conclusion about the cause of Fluellen’s death, to be valid, would have to be consistent with that data. Dr. Simmons’s new conclusion, however, was not consistent with the data.
Three autopsy findings are pertinent to the analysis. First, despite the fact that the cab of the truck was burning, the debris from the wreckage was burning, the grass and shrubs in the median were burning, and Fluellen’s own body was burning when Michael Wade and the bystanders saw him, Fluellen did not breathe in the products of combustion — soot and carbon monoxide. Second, the blunt-trauma injuries that Fluellen sustained, either in the initial impact or in being ejected from the cab of the truck after the second explosion, were not sufficient in themselves to cause Fluellen’s death. Third, Fluellen suffered from coronary-artery atherosclerosis; he had blockages of 50%, 90%, and 95%, respectively, in three coronary arteries; the latter two blockages were sufficient to cause immediate death.
The autopsy conclusively established that Fluellen had not breathed in the products of combustion. Both Dr. Gardner and Dr. Simmons agreed that only two inferences consistent with the data underlying that autopsy finding could be drawn, namely: (1) that Fluellen had suffered a fatal cardiac event before the fire or (2) that, although Fluellen may have been incapacitated by a cardiac event that was not immediately fatal before the fire, he was still alive and breathing after the impact and died very quickly in a “flash fire.” Dr. Gardner’s autopsy report was premised upon her having drawn the first inference. As indicated by the following testimony, Dr. Simmons’s amended autopsy report was premised on his and his colleagues’ having drawn the second inference. Dr. Simmons stated:
“[Tjhere are situations -that are documented in the literature that suggest people can die from conflagration or sudden fire essentially, usually relative to some sort of fuel source and suffer severe thermal injuries as well as possible inhalational injuries that essentially kill them before they’re able to breathe in long enough to accumulate soot or carbon monoxide. And based on discussions with the senior pathologists, we felt like this was the most likely scenario. ...”
(Emphasis added.) The foregoing testimony, insofar as it is quoted above, was consistent with the autopsy data and the facts of the case. Notably, however, Dr. Simmons added the following after the ellipsis indicated: “given the eyewitness accounts that [Fluellen] had been apparently moving and responsive although somewhat confused after the initial wreck but before the truck was engulfed inflames.” (Emphasis added.) That portion of Dr. Simmons’s testimony found after the ellipsis was not consistent with the undisputed facts of the case.
After Fluellen’s tractor-trailer struck the tree, Wade heard and “felt” an explosion. Wade immediately pulled over, parked his vehicle, crossed the highway, and saw that the cab of the truck was “completely engulfed in flames.” Wade was the first person to see Fluellen after *249 the crash, and Wade said that Fluellen was, at that time, “completely covered in flames.” There was no evidence indicating that anyone — either Wade or an unidentified bystander — had seen Fluellen “after the wreck but before the truck was engulfed in flames,” as Dr. Simmons testified.
Dr. Simmons had no basis for drawing the second inference — that Fluellen was still alive and breathing after the impact and died very quickly in a flash fire— unless he also believed that the flash fire occurred in the cab of the truck before the cab split apart and Fluellen, still strapped in his seat, was ejected from the cab. The belief that, if a flash fire occurred, it must have occurred in the cab of the truck before the cab split apart was a necessary condition for drawing the second inference because the expert testimony in this case defined a flash fire as one that occurs suddenly in a small enclosed space. Dr. Gardner stated (and Dr. Simmons did not disagree) that a flash fire is “an explosion, a very hot fire that happens very suddenly in a small space.” When Wade (and, presumably, the unidentified bystanders) first saw Fluellen, he was “covered in flames,” but that fire was not burning in a small enclosed space; it was burning in the open air after Fluellen’s seat had been ejected from the cab and was lying on the ground among other pieces of the wreckage. During questioning of Dr. Gardner by Horna-dy’s counsel, the following occurred:
“Q. I believe you described the flash fire as a very hot, very sudden fire. Would that cause instantaneous death?
“A. It would cause very rapid death.
“Q. Okay. Did you, from reading Sergeant Wade’s testimony that he ... heard an explosion, pulled his car off to the side of the road, waited on traffic and crossed two lanes of interstate, ran into the median, ran down to Mr. Fluel-len who was — the seat was on fire, I believed he testified the clothes were on fire, there [were] flames ... on the grass, in the cab, everything’s on fire, yet [Wade] believed [Fluellen] was still alive because of the movement. Is that a flash fire — is that description consistent with a flash fire to you?
“A. No, it’s not. I would expect — I mean, even if it was a flash fire, by the time all those other events happened, [Fluellen] would already be dead, and the movements would be those postmortem movements that were due to the heat.”
There is no escaping the conclusion that Dr. Simmons and his colleagues simply misunderstood the facts of the case to be that there were witnesses who had seen Fluellen after the impact and before the fire.[3] That misunderstanding was apparently what led Dr. Simmons and his colleagues to conclude that witnesses who reported “movement” by Fluellen had seen the voluntary movements of a living human being, rather than the effects of fire on a dead body.[4]
*250 The record leaves no doubt that it was Dr. Simmons’s mistaken view of the facts that induced him to issue an amended autopsy report and an amended death certificate. Dr. Simmons conceded that, “[without that EMS report specifically that’s documenting [Fluellen] moving and appearing confused after the initial impact but before the flames, I would agree that [the cause of death] could be attributed to atherosclerotic cardiovascular disease.”
The per curiam opinion discounts the significance of the amended death certificate’s being based upon a fundamental misunderstanding of the facts. It implies that the trial court could have disregarded the false factual premise upon which Dr. Simmons’s cause-of-death opinion was based and still have determined that Fluellen died from thermal injuries. The per curiam opinion suggests that the trial court may have determined that Fluellen died in a flash fire that occurred in the cab of the truck at the time of the initial impact and first explosion.[5]
That the trial court may have settled upon such an explanation for Fluellen’s death is certainly possible, but if the trial court did so, its determination was supported by surmise rather than by evidence. The expert testimony in this case defined a flash fire as one that occurs suddenly in a small enclosed space. Wade’s testimony that there was an explosion immediately after the tractor-trailer crashed into the tree raises the possibility that the explosion may have precipitated a flash fire in the cab of the truck, but there was no evidence indicating that the fire that occurred was, indeed, a flash fire. Given that the cab was split apart by a second explosion, it may have been impossible to determine, even at the scene of the wreck, whether conditions conducive to a flash fire had existed in the cab.[6]
In order to recover workers’ compensation benefits for an accidental injury, a claimant has the burden of proving medical causation by a preponderance of the evidence. See Ala.Code 1975, § 25-5-81(c); Waters Bros. Contractors, Inc. v. Wimberley, 20 So.3d 125, 134 (Ala.Civ.App.2009). To succeed in proving that the medical cause of Fluellen’s death was thermal injury due to a flash fire in the truck’s cab, the dependents were required to show that the probability of a flash fire’s having occurred in the cab of the truck before it was split apart by the second explosion was greater than the probability of Fluel-len’s having suffered a fatal cardiac event before the explosion or the fire. This they failed to show. See Ex parte Mobile Power & Light Co., 810 So.2d 756, 761 (Ala.2001) (determining that plaintiffs’ theory of causation of home fire was speculative because plaintiffs “presented no evidence indicating that the first possibility was any more probable than the other two”). Accord Bishop v. Bombardier, Inc., 399 F.Supp.2d 1372 (M.D.Ga.2005) (affirming a summary judgment in favor of defendant in a product-liability action because plaintiff, who did not establish which of two possibilities was the more likely source of a fuel leak in his personal watercraft, *251 failed to prove causation). In Mobile Power & Light, our supreme court stated:
“ ‘Many years ago, this Court gave an excellent explanation of the problem caused when a party presents speculative testimony to prove causation:
“ ‘ “ ‘Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.’ [Southworth v. Shea, 131 Ala. 419, 421, 30 So. 774, 775 (1901).]
“ ‘ “But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.” ’ ”
810 So.2d at 760 (quoting Ex parte Diversey Corp., 742 So.2d 1250, 1254 (Ala.1999), quoting in turn Southern Ry. v. Dickson, 211 Ala. 481, 486, 100 So. 665, 669 (1924)).
Because the dependents presented no evidence indicating that conditions conducive to a flash fire existed in the cab of the truck at the time of the initial impact and explosion, the theory that Fluellen died in a flash fire in the cab does not even rise to the level of a conjecture. That is so because there was no evidence indicating that the flash-fire theory was “consistent with known facts or conditions” in the cab. Id. A fortiori, there was no evidence indicating that, if such a flash fire had occurred, the probability that Fluellen died of thermal injuries in that fire was greater than the probability that he died of a cardiac event. In contrast, the theory that Fluellen’s death was caused by a cardiac event was both “consistent with known facts or conditions” and “deducible from [those known facts or conditions] as a reasonable inference.” Id.
My review of this case convinces me that the dependents did not satisfy their burden of proving medical causation by a preponderance of the evidence. Accordingly, I believe the trial court’s judgment is due to be reversed in its entirety and the cause remanded for the rendition and entry of a judgment in favor of Hornady.

. Even the per curiam opinion acknowledges Dr. Simmons's mistaken view of the facts. It states: "Dr. Simmons’s statement that there were witnesses who saw Fluellen after the impact but before the flames is inconsistent with the witnesses’ statements that Fluellen and the cab of the truck were immediately engulfed in flames.” 116 So.3d at 246 n. 2.

. Dr. Gardner explained the phenomenon:
"You expect a body that’s in a fire to be moving because of the contracture of the muscles. It’s a well-recognized effect of thermal injury to a body, alive or dead— well, dead, that they will contract. And the description that [Wade] gives in his deposition, to me, he was describing this thermal injury that we call the ‘pugilistic posture.' ”

. The per curiam opinion states that, "because Wade’s testimony was that the cab was immediately engulfed in Dames, even before the second explosion, the evidence tends to support the conclusion that Fluellen died of thermal injuries resulting from a Hash fire even more strongly than if Dr. Simmons’s misstatement had been correct.” 116 So.3d at 246 n. 2.

. For instance, one seeking to ascertain whether a flash fire had occurred might need to determine whether the cab windows had been open or closed at the time of the first explosion; the second explosion that split the cab apart probably made such a determination impossible.